1

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

2

3

4

5

6

7

8

Attorneys for Plaintiffs Kevin Klipfel
and Andrea Klipfel

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

12

13

14

15

16

17

18

19

20

21

22

| KEVIN KLIPFEL and ANDREA KLIPFEL individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, a Delaware corporation, and DOES 1-10, inclusive. <br><br> Defendants. | Case No.: 2:15-cv-02140-GW-MRWX <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> (1)  Violations of California Consumer Legal Remedies Act <br> (2)  Violations of Unfair Competition Law <br> (3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act <br> (4)  Breach of Warranty under the Magnuson-Moss Warranty Act <br> (5)  Breach of Express Warranty under Cal. Com. Code § 2313 <br> (6)  Unjust Enrichment <br><br> **DEMAND FOR JURY TRIAL** |

23

24

25

26

27

28

**INTRODUCTION**

1.     Plaintiffs Kevin and Andrea Klipfel ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any vehicle designed manufactured, marketed, distributed, sold, warranted and serviced by Ford Motor Company ("Ford" or "Defendant") and equipped with Ford's PowerShift dual clutch transmission ("Dual Clutch Transmission" or "PowerShift Transmission") (collectively, "Class Vehicles"). The PowerShift transmission is defective and poses serious safety concerns.

2.     Plaintiffs are informed and believe and based thereon allege that the PowerShift Transmission is defective in its design and/or manufacture in that, among other problems, the transmission slips, bucks, kicks, jerks, harshly engages, has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, and, eventually, transmission failure (the "Transmission Defect").

3.     Ford has never acknowledged publicly, and Ford has never admitted, that the Transmission Defect even exists.  To the contrary, Ford actively concealed the Transmission Defect by, among other things, telling customers that the symptoms associated with the Transmission Defect were "normal driving conditions."  Ford issued multiple Technical Service Bulletins ("TSBs") *to dealers* but never directly notified consumers of known problems with the PowerShift Transmission.  Ford further perpetuated its cover-up by ultimately issuing two "Customer Satisfaction Programs" that simply offered additional ineffectual repairs without disclosing the truth about the Transmission Defect.  Customers whose vehicles supposedly were repaired pursuant to the Customer Satisfaction Programs have continued to experience the Transmission Defect.  The Transmission Defect has no known repair.

4.     None of the information in the market that discussed the Transmission Defect disclosed, fully or at all, the material facts known only to

Ford, including that the PowerShift Transmission had serious problems since its early development that Ford simply was unable to fix and that rendered the Class Vehicles unsafe to drive.  The PowerShift Transmission was a new technology to Ford that Ford rushed to the market without disclosing to Plaintiffs and the Class of the known problems described above with the PowerShift Transmission.  Ford should have disclosed the problems with the transmission in, among other places, a Disclosure Sheet or similar document presented to all purchasers at the time of purchase advising them of known problems with the PowerShift Transmission so that Plaintiffs and the Class could make informed purchasing decisions.

5.    Piecemeal statements in the market about the performance of the PowerShift Transmission do not excuse Ford's failure to disclose.  Only Ford knew the full truth about the Transmission Defect.  It was Ford's obligation to disclose the material facts that only Ford knew about.

6.    This defect poses an obvious safety concern.  Many class members have complained of their vehicles lurching into or losing power in traffic.  *See* Paragraph 68, *infra*.  The following 2011 Fiesta owner's complaint to the National Highway Traffic Safety Administration is just one example:

> THE TRANSMISSION SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED. CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE STOPPING.  AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE BRAKES.  ON ONE INSTANCE THE CAR FAILED TO STOP AT RED LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE STOPPING.    (Safecar.gov, *Search for Complaints* (January 15, 2015), http://www-odi.nhtsa.dot.gov/complaints/).

7.    In 2010, Ford knew of the Transmission Defect and began issuing Technical Service Bulletins ("TSBs") to its dealerships in an effort to address it. But Ford never communicated the TSBs, or the information they contained, directly to the class.  Instead, Ford prepared a separate series of intentionally

sanitized documents for its customers to induce them into believing that their kicking, bucking, sling-shotting (etc.) vehicles were exhibiting "normal driving characteristics."

8.      The problems plaguing the PowerShift Transmission cannot be chalked up to "normal driving characteristics."   Such language is belied by the fact that, on information and belief, Ford has replaced hundreds, if not thousands, of Class Members' PowerShift Transmissions due to early catastrophic transmission failure.

9.      The great majority of class members received no such replacement, however, and even if they did, the replacement transmissions are likewise defective.  Typically, when Class Vehicle owners whose vehicles are exhibiting the Transmission Defect's manifestations bring their vehicles into Ford dealerships to complain, Ford dealerships tell class members that their vehicles are operating normally.  Ford does not disclose, and has not disclosed, that the transmission suffers from a defect or that the PowerShift Transmission is unsafe.

10.      Ford dealerships will sometimes provide "software flashes" to Class Members whose vehicles are exhibiting the Transmission Defect.  These software flashes are ineffective, and Class Members are forced to come back to the dealerships, sometimes five or six times, complaining of the same transmission problems.  Class members receive multiple, ineffective software flashes, and are told their transmissions are operating normally.

11.      Ford dealerships will also sometimes perform replacements and repairs to the clutch components of the PowerShift Transmission, but those repairs are likewise ineffective, and on information and belief, can require up to a six month waiting period, if not longer.

12.      Indeed, this pattern is so prevalent that Ford prepared a handout for its dealers entitled "PowerShift 6-Speed Transmission Operating Characteristics."  Ford drafted this document and provided it to its dealers to

give to customers whose vehicles were exhibiting the Transmission Defect, in an apparent attempt to induce customers into believing the problems they were experiencing were "normal driving characteristics."  Nothing in this handout discloses that the PowerShift Transmission is defective.

13.     Finally, in August 2014, Ford issued a "Customer Satisfaction Program: Program Number 14M01," telling the class that its vehicles "may . . . exhibit excessive transmission shudder during light acceleration.  This condition may be caused by fluid contamination of the clutch due to leaking transmission seals."  Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems.  Further, this campaign was only disseminated to owners and not prospective buyers.  Ford merely offered more ineffective "repairs" that do not actually fix the problem.   On information and belief, owners who have had this program performed on their vehicles continued to complain of the Transmission Defect as their vehicles were never repaired.

14.     Ford's "Customer Satisfaction Program: Program Number 14M01" letter was highly selective.  Despite Ford's knowledge of the following, Ford did *not* disclose that the PowerShift transmission was defective, and did not disclose the PowerShift transmission exhibits transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, or transmission failure.

15.     Ford then released, in February of 2015, "Customer Satisfaction Program: Program Number 14M02," informing the class that their Class Vehicles may suffer from symptoms of loss of transmission engagement while driving, no-start, or a lack of power.  Ford blamed these symptoms on failures in the Transmission Control Module ("TCM").  Still, Ford did not issue a recall for the repeatedly failing and dangerous PowerShift Transmission, and this

1    campaign was only disseminated to owners, not prospective purchasers.  Ford

2    merely offered more ineffective "repairs" that do not actually fix the problem.

3    On information and belief, owners who have had this program performed on

4    their vehicles continued to complain of the Transmission Defect as their vehicles

5    were never repaired.

6                    **Background – The PowerShift Transmission**

7         16.    The PowerShift Transmission is a $1095.00 option for the Class

8    Vehicles.

9         17.    Ford designed and marketed its "PowerShift Transmission" as a

10   more advanced and fuel-efficient alternative to a traditional manual or automatic

11   transmission and offered it as the sole "Automatic" option in the Class Vehicles.

12        18.    Traditional manual transmissions use a driver-controlled clutch.  By

13   pressing and releasing a foot pedal, the driver engages and disengages the engine

14   from the transmission, allowing the vehicle to travel smoothly while the driver

15   manually changes gears.

16        19.    In contrast, typical automatic transmissions free the driver from

17   operating the clutch through the use of a fluid-filled device called a torque

18   converter.  The torque converter substitutes for the manual transmission's clutch,

19   transmitting power from the engine to the transmission through a fluid medium.

20        20.    While typical automatic transmissions offer increased convenience,

21   they are generally less fuel-efficient and slower-shifting than their manual

22   counterparts.  This is because the torque converter transfers power less

23   efficiently than a clutch.  As a result, Ford marketed and sold its PowerShift

24   Transmission as a "best of both worlds" alternative, offering a manual

25   transmission's fuel economy with an automatic transmission's ease of operation

26   and shift quality.

27        21.    Ford's PowerShift Transmission, while sometimes referred to as an

28   "automatic," is actually a set of computerized manual transmissions.  It lacks a

1    torque converter, instead using two "dry" clutches to directly engage and

2    disengage the engine with and from the transmission.  Whereas similar

3    "automated manual" transmissions on the market use "wet" clutches bathed in

4    oil, Ford's PowerShift Transmission clutches lack the oil pumps and other

5    components of a wet clutch system, and instead operate "dry."

6       22.    Ford designed the Class Vehicles' computerized "automated

7    manual" transmissions in an effort to meet heightened governmental and

8    consumer expectations for fuel economy, performance, and efficiency.

9    According to Ford's own press release, dated March 10, 2010, "PowerShift with

10   dry-clutch facings and new energy-saving electromechanical actuation for

11   clutches and gear shifts saves weight, improves efficiency, increases smoothness,

12   adds durability and is sealed with low-friction gear lubricant for the life of the

13   vehicle.  This transmission requires no regular maintenance."[1]

14      23.    Theoretically, an "automated manual" transmission, i.e. the

15   PowerShift Transmission, should have the convenience of an automatic

16   transmission without sacrificing the fuel efficiency and shift speed of a

17   manually-shifted vehicle.  In practice, however, Ford's PowerShift Transmission

18   is plagued by numerous problems and safety concerns, rendering the vehicle

19   virtually inoperable.

20      24.    The Transmission Defect causes unsafe conditions, including, but

21   not limited to, Class Vehicles suddenly lurching forward, delayed acceleration,

22   and sudden loss of forward propulsion.  These conditions present a safety hazard

23   because they severely affect the driver's ability to control the car's speed,

24

25      [1] *See* PRNewswire.com, "PowerShift Transmission Production Begins,
     Driving Ford Small Car Fuel Economy Leadership,"
26   http://www.prnewswire.com/news-releases/powershift-transmission-production-
     begins-driving-ford-small-car-fuel-economy-leadership-89373007.html (last
27   visited February 4, 2015).

28

acceleration, and deceleration.  As an example, these conditions may make it difficult to safely merge into traffic.  Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed.  As a result, Plaintiffs and Class Members have experienced their cars lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

25.     On information and belief, the Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which can result in premature transmission failure and requires expensive repairs, including replacement of the transmission and its related components.

**Ford's Knowledge**

26.     Beginning as early as 2010, Defendant knew or should have known that the Class Vehicles and the PowerShift Transmission was defective it its design and/or manufacture and that adversely affect the drivability of the Class Vehicles and cause safety hazards.

27.     Plaintiffs are informed and believe and based thereon allege that prior to the sale of the Class Vehicles, Defendant knew, or should have known, about the Transmission Defect through its exclusive knowledge of non-public, internal data about the Transmission Defect, including: pre-release testing data; early consumer complaints about the Transmission Defect to Defendant's dealers who are their agents for vehicle repairs; warranty claim data related to the defect; aggregate data from Ford's dealers; consumer complaints to the National Highway Traffic Safety Administration  ("NHTSA") and resulting notice from NHTSA; dealership repair orders; testing conducted in response to owner or lessee complaints; technical service bulletins ("TSBs") applicable to the Class Vehicles; the existence of the defect in the substantially identical European and Australian model vehicles; and other internal sources of aggregate information

FIRST AMENDED CLASS ACTION COMPLAINT

about the problem.  Nevertheless, Defendant has actively concealed and failed to disclose this defect to Plaintiffs and Class Members at the time of purchase or lease and thereafter.

28.    The Ford Fiesta and Ford Focus have the same or substantially identical optional PowerShift Transmission, and the Transmission Defect is the same for both vehicles.  In fact, the PowerShift Transmission in the Class Vehicles is universally referred to by Ford as the "DPS6 automatic transmission."

29.    Before offering the vehicle for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia.  Although the American version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models.[2]  European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

30.    On information and belief, despite developing and patenting the THF technology and spending approximately 6,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity as well as spending over $550 million to build a new transmission manufacturing facility with Getrag in Mexico to produce the Powershift Transmission, Ford is now canceling the PowerShift program many years prior to its estimated end date.

31.    As a result of the Transmission Defect, in 2010 and 2011, Ford

---

[2] *See* Autoblog.com, "Ford officially announces dual clutch PowerShift gearbox for 2010," http://www.autoblog.com/2009/01/21/ford-officially-announces-dual-clutch-powershift-gearbox-for-201/ (last visited February 4, 2015).

issued several Service Bulletins ("TSBs") to its dealers in the United States, but not its customers[3], acknowledging problems in the PowerShift Transmission. For example, Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code . . . ."

32.     Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

33.     Throughout 2011, Ford continued to issue various TSBs covering the Ford Fiesta and Ford Focus vehicles which advised dealers of the continuing transmission problems.  For example, a Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

34.     Because Ford will not notify Class Members that the PowerShift Transmission is defective, Plaintiffs and Class Members (as well as members of the general public) are subjected to dangerous driving conditions that often occur without warning.

35.     The alleged Transmission Defect was inherent in each Ford Fiesta and Ford Focus' PowerShift Transmission and was present in each Ford Fiesta

---

[3] Some, but not all, service bulletins are available through the website for the Office of Defect Investigations of the National Highway Traffic Safety Administration.

and Ford Focus' PowerShift Transmission at the time of sale.

36.     Ford knew about and concealed the Transmission Defect present in every Class Vehicle, along with the attendant dangerous safety and driveability problems, from Plaintiffs and Class Members, at the time of sale, lease, and repair and thereafter.  In fact, instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge the defects' existence or performed ineffective software upgrades or other repairs that simply masked the defect.

37.     If Plaintiffs and the Class Members had known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

38.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including, but not limited to, the $1,095.00 cost of the optional PowerShift transmission, out-of-pocket costs related to repairs to the PowerShift Transmission.  Additionally, as a result of the Transmission Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions and related components are substantially certain to fail before their expected useful life has run.  Plaintiffs also seek injunctive relief in the form of extended warranties for all Class Vehicles.

## PARTIES

### Plaintiffs Kevin and Andrea Klipfel

39.     Plaintiffs Kevin and Andrea Klipfel are California citizens who reside in Paso Robles, California.

### Ford Focus

40.     On or about April 24, 2013, Plaintiffs purchased a new 2013 Ford Focus from Sunrise Ford of North Hollywood, an authorized Ford dealer in Los

Angeles County.  Their vehicle was equipped with an optional PowerShift Transmission that cost them $1,095.00.

41.   Plaintiffs purchased this vehicle primarily for personal, family, or household use.  Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

42.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiffs' decision to purchase their vehicle.  Prior to purchasing their Class Vehicle, Plaintiffs reviewed Ford's official website in order to research Focus options and features.  Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern, when Plaintiffs purchased their 2013 Ford Focus, Plaintiffs would have seen such disclosures and been aware of them.  Indeed, Ford's omissions were material to Plaintiffs.  Like all members of the classes, Plaintiffs would not have purchased their 2013 Ford Focus, or would not have paid the purchase price charged by Ford, had they known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

43.   By August 2014, only four months after purchase, Plaintiffs' transmission was causing jerking, kicking, bucking, delayed acceleration and a delay in downshifts, most notably when attempting to accelerate after coming to a complete stop. The transmission was also was erratically shifting in second and third gear.  Oftentimes, Plaintiff was unable to accelerate from the middle of an intersection prior to making a left turn, resulting in the vehicle nearly stalling.

44.   On or about April 03, 2014, with approximately 13,935 miles on the odometer, Plaintiffs brought their vehicle to Paso Robles Ford, an authorized Ford dealer in Paso Robles, California, complaining that his transmission was causing jerking, kicking, bucking, delayed acceleration and a delay in

downshifts, most notably when attempting to accelerate after coming to a complete stop. Plaintiff also complained at that time that the vehicle was erratically shifting in second and third gear. Plaintiff asked the dealership to check the transmission. The service advisor at Ford verified the concern and asked to keep the vehicle overnight. The service technician performed TSB 14-0197, reprogrammed the PCM (Powertrain Control Module) and the TCM (Transmission Control Module), performed a pinpoint test, and found, after a road test, that the vehicle was "all OK."

45.    Within a couple of days of this visit, Plaintiffs' vehicle was once again exhibiting all of the problems he had complained about.

46.    On or about December 1, 2014, with approximately 23,922 miles on the odometer, Plaintiffs again returned to Paso Robles Ford, again complaining that his transmission was shifting erratically, and causing jerking, kicking, bucking, delayed acceleration and a delay in downshifts, most notably when attempting to accelerate after coming to a complete stop. Plaintiff also complained at that time that the vehicle was erratically shifting in second and third gear. Plaintiff again asked the dealership to check the transmission. The service advisor found on a road test that the transmission shifting was operating normally, and could not find a problem.

47.    Within a couple of days of this visit, Plaintiffs' vehicle was once again exhibiting all of the problems he had complained about.

48.    Ford's authorized dealerships have failed to adequately repair Plaintiffs' vehicles. Despite these repair attempts by Ford and its dealers, Plaintiffs transmissions continue to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts, most notably when trying to accelerate after coming to a complete stop.

**Ford Fiesta**

49.   On or about July 27, 2013, Plaintiffs purchased a new 2013 Ford Fiesta from Sunrise Ford of North Hollywood, an authorized Ford dealer in Los Angeles County.  Their vehicle was equipped with an optional PowerShift Transmission that cost them $1,095.00.

50.   Plaintiffs purchased this vehicle primarily for personal, family, or household use.  Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

51.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiffs' decision to purchase their vehicle.  Prior to purchasing their Class Vehicle, Plaintiffs reviewed Ford's official website in order to research Focus options and features.  Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern, when Plaintiffs purchased their 2013 Ford Fiesta, Plaintiffs would have seen such disclosures and been aware of them.  Indeed, Ford's omissions were material to Plaintiffs.  Like all members of the classes, Plaintiffs would not have purchased their 2013 Ford Fiesta, or would not have paid the purchase price charged by Ford, had they known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

52.   On or about December 1, 2014, with approximately 20,851 miles on the odometer, Plaintiffs brought their vehicle to Paso Robles Ford, an authorized Ford dealer in Paso Robles, California, complaining that the vehicle was shifting erratically, and causing jerking, kicking, bucking, delayed acceleration and a delay in downshifts, most notably when attempting to accelerate after coming to a complete stop complaining. Plaintiff also complained that the vehicle had a very sluggish shift between the first and second gears and that the upshift bogs

1  down like the vehicle might stall.  The service advisor verified the concern and

2  performed TSB 14-0197, reprogrammed the PCM (Powertrain Control Module)

3  and the TCM (Transmission Control Module), performed adaptive re-learn,

4  performed a pinpoint test, and found the vehicle "working as designed."

5       53.    Within a couple of days of this dealership visit, all of the problems

6  Plaintiffs had complained of had returned.

7       54.    Ford's authorized dealerships have failed to adequately repair

8  Plaintiffs' vehicles.  Despite these repair attempts by Ford and its dealers,

9  Plaintiffs transmission continue to shift erratically and sluggishly, and cause

10  bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching,

11  erratic shifting, and a delay in downshifts, most notably when trying to

12  accelerate after coming to a complete stop.  Further, the upshift continues to bog

13  down like the vehicle might stall.

14       55.    At all times, Plaintiffs, like all Class Members, have driven their

15  vehicles in a foreseeable manner and in the manner in which they were intended

16  to be used.

17  **Defendant**

18       56.    Defendant Ford Motor Company is a corporation organized and in

19  existence under the laws of the State of Delaware and registered with the

20  California Department of Corporations to conduct business in California.  Ford

21  Motor Company's Corporate Headquarters is located at 1 American Road,

22  Dearborn, Michigan 48126.  Ford Motor Company designs and manufactures

23  motor vehicles, parts, and other products for sale in the United States and

24  throughout the world.  Ford Motor Company is the warrantor and distributor of

25  the Class Vehicles in the California.

26       57.    At all relevant times, Defendant was and is engaged in the business

27  of designing, manufacturing, constructing, assembling, marketing, distributing,

28  and selling automobiles and motor vehicle components in California.

1
2

**JURISDICTION AND VENUE**

3    58.    This class action is brought pursuant to Rule 23 of the Federal Rules
4    of Civil Procedure.  This Court has original jurisdiction over this action pursuant
5    to 28 U.S.C. § 1332(d)(2) and based on 28 U.S.C. §§ 1441 and 1453.

6    59.    Venue is proper in this Court because this case was originally filed
7    in the Superior Court of California for the County of San Luis Obispo, which is
8    within the Central District of California.  Venue properly lies in the United
9    States District Court for the Central District of California pursuant to 28 U.S.C.
10   §§ 84(a), 1391(a) and (c) and 1441(a).  In addition, under 28 U.S.C. § 1367, this
11   Court may exercise supplemental jurisdiction over the state law claims because
12   all of the claims are derived from a common nucleus of operative facts and are
13   such that plaintiffs would ordinarily expect to try them in one judicial
14   proceeding.,

15   60.    In addition, Plaintiff Kevin Klipfel resides in the County of San Luis
16   Obispo, California, within the Central District of California, and the acts,
17   omissions, and one of the two contractual performances alleged herein took
18   place in the County of San Luis Obispo, California.  Plaintiff Kevin Klipfel's
19   Declaration, as required under Cal. Civ. Code section 1780(d), which reflects
20   that a substantial part of property that is the subject of this action is situated in
21   San Luis Obispo County, and that Defendant is doing business in San Luis
22   Obispo County, California, is attached as Exhibit 1.

23                              **FACTUAL ALLEGATIONS**

24   61.    Since 2010, Ford has designed, manufactured, distributed, sold, and
25   leased the Class Vehicles.  Ford has sold, directly or indirectly, through dealers
26   and other retail outlets, hundreds of thousands of Class Vehicles equipped with
27   the PowerShift Transmission in California.

28   62.    Ford's PowerShift Transmission, while occasionally referred to as

1   an "automatic," is actually a set of computerized manual transmissions.  It lacks

2   a torque converter, instead using two "dry" clutches to directly connect and

3   disconnect the engine to and from the transmission.  Whereas other "automated

4   manual" transmissions on the market use "wet" clutches bathed in oil, Ford's

5   PowerShift Transmission clutches lack the oil pumps and other components of a

6   wet clutch system, and instead operate "dry."

7          63.    The PowerShift Transmission is offered as the sole "automatic"

8   option for both the Ford Fiesta and Ford Focus and is priced at $1,095.00.  The

9   PowerShift Transmissions for both vehicles have the same design and

10  components.

11         64.    On information and belief, Ford designed the Class Vehicles'

12  computerized "automated manual" transmissions in an effort to meet heightened

13  governmental and consumer expectations for fuel economy, performance, and

14  efficiency.  Theoretically, such a transmission should have the convenience of an

15  automatic transmission without sacrificing the fuel efficiency and shift speed of a

16  manually-shifted vehicle.  In practice, however, Ford's PowerShift Transmission

17  has been plagued by numerous problems and safety hazards, rendering the

18  vehicle virtually inoperable.

19         65.    Dating back to at least 2010, Ford was aware of the defects of the

20  PowerShift Transmission.  Ford, however, failed and refused to disclose these

21  known defects to consumers.  As a result of this failure, Plaintiffs and Class

22  Members have been damaged.

23         **The Transmission Defect Poses an Unreasonable Safety Hazard**

24         66.    The Transmission Defect causes unsafe conditions in the Class

25  Vehicles, including but not limited vehicles suddenly lurching forward, sudden

26  loss of forward propulsion, and significant delays in acceleration.  These

27  conditions present a safety hazard because they severely affect the driver's

28  ability to control the car's speed, acceleration, and deceleration.  Even more

troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed.  As a result, Plaintiffs and Class Members have experienced their cars lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

67.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the transmission.  Complaints that owners and lessees filed with the National Highway Traffic Safety Administration ("NHTSA") demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the transmission and how potentially dangerous the defective condition is for consumers.  The following is just a small sampling of the over 500 safety-related complaints describing the Transmission Defect (spelling and grammar mistakes remain as found in the original) (Safecar.gov, *Search for Complaints* (February 3, 2014), http://www-odi.nhtsa.dot.gov/complaints/):

**2011 Ford Fiesta NHTSA Complaints:**

a.      (2011 Ford Fiesta 9/25/2014) I BOUGHT THIS CAR IN JUNE 2011. RIGHT FROM THE BEGINNING IT HAS HAD A TRANSMISSION PROBLEM. THE CAR SHUDDERS WHEN TRYING TO ACCELERATE. SOMETIMES IT'S LIGHT SHUDDERING AND SOMETIMES IT'S VERY ROUGH WHERE THE WHOLE CAR IS JERKING. THERE HAVE BEEN SEVERAL INCIDENCES  WHERE I WAS TURNING LEFT AND THOUGHT I HAD PLENTY OF TIME BUT THE CAR DECIDES TO SHUDDER AND I HAVE ALMOST BEEN HIT BY ANOTHER CAR. MY HUSBAND HAD A SUPER CLOSE CALL. SAME THING TURNING LEFT AND THE CAR WAS SHUDDERING SO BAD IT JUST WOULDN'T GO AND HE WAS ALMOST HIT BY A TRUCK. WE HAVE TAKEN THE CAR IN SEVERAL TIMES TO BE FIXED AND EACH TIME IT'S FIXED FOR A SHORT AMOUNT OF TIME BUT EVENTUALLY  THE SHUDDERING COMES RIGHT BACK. I'VE BEEN TOLD ALL THE FIESTAS HAVE THIS PROBLEM AND EVEN IF THEY PUT A NEW TRANSMISSION IN THIS PROBLEM WILL HAPPEN BECAUSE OF THE WAY THE TRANSMISSIONS BEEN BUILT. I FEAR IT'S ONLY A MATTER OF TIME BEFORE SOMEONE IS SEVERELY HURT OR KILLED FROM THIS PROBLEM. I FEEL LIKE FORD NEEDS TO STEP UP AND

FIX THIS PROBLEM BEFORE IT'S TOO LATE.

b.  (2011 Ford Fiesta 08/04/2014) I OWN A 2011 FORD FIESTA. THE CAR HAS LEFT ME STRANDED  ON THE SIDE OF THE ROAD 4 TIMES. 3 OUT OF THE 4 TIMES I BROKE DOWN I WAS RIGHT IN THE MIDDLE OF RUSH HOUR TRAFFIC IN NEW ORLEANS! NOT GOOD! I COULD HAVE BEEN KILLED, OR KILLED SOMEONE ELSE. TWICE I'VE HAD TO WAIT ON THE SIDE OF THE INTERSTATE  FOR 2.5 HOURS WAITING FOR A TOW TRUCK WHEN I WAS SUPPOSED  TO PICK UP MY 11 YEAR OLD FROM CAMP. I'VE MISSED WORK, MY SON HAS BEEN STRANDED, AND I JUST DO NOT FEEL SAFE IN THIS CAR. IT'S BEEN IN THE SHOP 4 TIMES NOW AND THEY'VE WORKED ON IT  3  TIMES.  THE  FIRST  TIME  IT  BROKE  DOWN  I BROUGHT IT TO FORD AND THEY KEPT IT FOR ONE DAY BUT THEY DIDN'T GET TO WORK ON IT BECAUSE I WAS   HAVING   PROBLEMS   WITH   MY   EXTENDED WARRANTED, WHICH IS THROUGH NISSAN. THE 2ND TIME I WAS TOLD THE CLUTCH WENT OUT IN THE DUAL TRANSMISSION DUE TO TRANSMISSION FLUID LEAKING ON A COMPONENT IN THE CAR. THEY TOOK MY  TRANSMISSION  OUT,  REPLACED  THE  CLUTCH, ACCIDENTALLY BUSTED OUT MY WINDSHIELD IN THE PROCESS, THEN GAVE THE CAR BACK. NOT TOO LONG AFTER I GOT IT BACK, IT BROKE DOWN AGAIN. THEY SAID IT WAS THE COMPUTER THAT OPERATES THE TRANSMISSION.   THEY   DID   UPDATES   ON   THE COMPUTER   AND  GAVE  IT  BACK  TO  ME.  THE  VERY NEXT DAY IT BROKE DOWN AGAIN AND IS NOW SITTING BACK AT FORD IN SLIDELL. AT THIS POINT I DON'T EVEN THINK THEY KNOW WHAT TO DO WITH IT. I THEN FILE A COMPLAINT WITH FORD AND THEY SAY THERE'S NOTHING THEY CAN DO? SO I'M JUST STUCK WITH THIS BROKEN CAR FROM FORD THAT IS ONLY A FEW YEARS OLD? MY SON WAS WITH ME ONE OF THE TIMES THAT I BROKE DOWN - THE POOR THING WAS SCARED HALF TO DEATH! I CAN'T KEEP MISSING WORK - WHAT AM I SUPPOSED  TO DO? ALL I SEE ONLINE IS PEOPLE WITH LAWSUITS AGAINST FORD BECAUSE OF THE  TRANSMISSION  IN  THESE  THINGS...  WHY  ISN'T THIS A RECALL YET? IT IS DEFINITELY DANGEROUS!

c.  (2011Ford  Fiesta  06/24/2014)  MY  2011  FORD  FIESTA TRANSMISSION HAS BEEN AN ISSUE FOR AWHILE NOW. I HAVE HAD THEM RESET THE SYSTEM AND ALSO REPLACE THE CLUTCH. HOWEVER, MY CAR STILL HAS ISSUES THE TRANSMISSION STICKS AND DOES NOT ALWAYS ACCELERATE  WHEN I PRESS ON THE GUESS. YOU CAN HEAR AND FEEL THE ENGINE STICK AND SHUTTER. THE CAR IS MORE AND MORE FAILING TO ACCELERATE  WHICH HAS CAUSED TO ME TO ALMOST GET INTO SEVERAL ACCIDENTS. THE SOLUTION I WAS TOLD BY FORD WAS THAT THERE IS NO TRUE FIX AND IT IS JUST SOMETHING THEY CAN NOT FIX. MY CAR IS

BRAND NEW AND STILL UNDER WARRANTY. THAT TYPE OF ANSWER IS NOT ACCEPTABLE, ESPECIALLY WHEN I HAVE ALMOST BEEN IN SEVERAL ACCIDENTS BECAUSE OF MY CAR MALFUNCTIONING. I WANT THIS ISSUE RESOLVED    FOR GOOD, I AM EXTREMELY CONCERNED FOR MY SAFETY IN MY CAR AND FEAR OF GETTING IN AN ACCIDENT OR SERIOUSLY INJURED DUE TO THIS ISSUE. *TR

d.    (2011 Ford Fiesta 04/18/2014) I HAD A 2011 FORD FIESTA, I HAVE BEEN EXPERIENCING A JERKING/LUNGING MOTION WHEN THE TRANSMISSION DOWNSHIFTS FROM TIME TO TIME. I HAVE ALMOST BEEN IN AN ACCIDENT TWICE BECAUSE OF THIS WITH MY 8 YEAR OLD DAUGHTER  AND GIRL SCOUTS IN THE CAR. I TOOK THE VEHICLE IN FOR SERVICE AND HAVE INFORMED THEIR SERVICE DEPT. /MECHANIC  OF THE ISSUE. THEY ASSURED ME THAT NOTHING WAS WRONG AND THE VEHICLES COMPUTER IS ADJUSTING TO HOW I DRIVE THE CAR AND THAT IS WHY IT IS DOING THIS. THEY REPLACED THE CLUTCH AND REPROGRAMMED MY CAR OVER FOUR TIMES? I HAVE DONE A LITTLE RESEARCH  AND FOUND THIS WEBSITES AFTER WEBSITE WITH PEOPLE WITH OTHER COMPLAINTS  SIMILAR TO MINE. I CALLED FORD MOTOR COMPANY AND FILED A FORMAL COMPLAINT. IT TOOK A WEEK FOR SOMEONE TO CALL BE BACK AND I WAS TOLD THE CAR WAS FINE. I TRIED TO CALL BACK, BUT YOU ONLY GET TO THE CALL CENTER AND NO FURTHER. I WAS REFUSED TO BE TRANSFERRED TO A MANAGER AND WAS TOLD THAT WAS THAT?S THE WAY THE CAR WAS DESIGNED TO DRIVE. I WAS OFFERED A DISCOUNT THE X PLAN TO TRADE IN MY CAR FOR ANOTHER BUT THAT WOULD NOT HELP. WHEN DEALING WITH THE DEALERSHIP  THE SERVICE MANAGER SAID I AM SORRY I CAN'T HELP YOU ANYMORE. WE GET AT LEAST 6 CALLS A DAY ABOUT THE SAME PROBLEM BUT UNTIL FORD DOES SOMETHING THERE IS NOTHING WE CAN DO. I WORK WITH THREE OTHER WOMEN THAT ALSO HAVE HAD THE SAME PROBLEM WITH THEIR CARS. TWO OF US HAD TO TRADE OUR CARS BECAUSE WE FELT SO UN-SAFE IN THE CARS. *TR

e.    (2011 Ford Fiesta 01/16/2013) NUMEROUS OCCASIONS WHILE ACCELERATING AND DECELERATING THE 2011 FORD FIESTA STARTED TO STALL, JERK AND BUCK LIKE A BRONCO. IT SEEMED AS THOUGH IT WAS NOT GETTING POWER TO THE TRANSMISSION OR DRIVE TRAIN MOMENTARILY. THIS HAS BEEN AN ONGOING OFF AND ON FOR ABOUT A YEAR. WE RECENTLY TOOK IT TO THE SUNRISE FORD DEALERSHIP, FORT PIERCE, FL, AND THE SERVICE REP CLAIMS THEY COULD NOT FIND ANYTHING MECHANICALLY WRONG. THIS VEHICLE IS USED TO TRANSPORT YOUNG CHILDREN

FIRST AMENDED CLASS ACTION COMPLAINT

AND ADULTS. I EXPECT THE FORD MANUFACTURER TO EITHER REMEDY THE ISSUE OR BUY THE VEHICLE BACK FOR WHAT WE PAID FOR IT!!! IT COULD CAUSE AN ACCIDENT BECAUSE WHEN IT BUCKS IT ALSO SLOWS DOWN IN 45-50MPH TRAFFIC, AND THE TRAFFIC IS BUMPER TO BUMPER AT TIMES AND WE COULD GET REAR ENDED!!! SOMETHING NEEDS TO BE DONE IMMEDIATELY. SHOULD I ALSO FIND AN ATTORNEY THAT WILL REPRESENT US SHOULD FORD MOTOR BE LIABLE??? *TR

f.   (2011 Ford Fiesta 10/31/2012) TL* THE CONTACT OWNS A 2011 FORD FIESTA. THE CONTACT STATED THAT WHILE TRAVELING 3 MPH THE VEHICLE ERRONEOUSLY ACCELERATED CAUSING ANOTHER VEHICLE TO CRASH INTO THE VEHICLE. THE DRIVER AND PASSENGER OF THE CONTACT'S VEHICLE SUFFERED WHIPLASH. THE VEHICLE WAS ABLE TO BE DRIVEN AWAY FROM THE SCENE. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE IT WAS FOUND THAT THE TRANSMISSION HAD FAILED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED ABOUT THE ISSUE. THE FAILURE MILEAGE WAS UNAVAILABLE AND THE CURRENT MILEAGE WAS 42,000.

g.   (2011 Ford Fiesta 03/21/2011) TRANSMISSION UNEXPECTEDLY CHANGING GEARS OR SELECTING INCORRECT GEAR. SUDDEN LOSS OF POWER DUE TO TRANSMISSION REMAINING IN TOO HIGH A GEAR FOR ENGINE RPM'S. LAPSE IN GEAR SELECTION CAUSES ERRATIC AND DANGEROUS ACCELERATION. DANGEROUS GEAR CHANGES CAUSE CAR TO BOTH SURGE AND STALL - DEPENDING UPON ENGINE RPM'S NOT CORRESPONDING TO CORRECT TRANSMISSION GEAR. *TR

**2012 Ford Fiesta NHTSA Complaints:**

a.   (2012 Ford Fiesta 10/09/2014) THE CAR MAKES GRINDING NOISES FROM TRANSMISSION AND WHEN PULLING OUT OF A PARKING LOT THE CAR STALLS I ALMOST GET HIT BY ANOTHER CAR. WHEN IN STOP AND GO TRAFFIC THE AT LUNGES FORWARD ALMOST HITTING ANOTHER CAR. AS OF TODAY CAR HAS BEEN IN SHOP 3 TIMES ON THIRD TIME THEY FIXED THE CLUTCH IT DID FONRLE FOR A FEW MONTHS NOW ITS DOING IT AGAIN AND THEY ARE CLAIMING ITS NORMAL. I'M AFRAID FOR MY SAFETY

b.   (2012 Ford Fiesta 08/21/2014) THIS IS AN ON-GOING ISSUE WITH THIS CAR. WHILE DRIVING AT LOWER SPEEDS OR WHILE TRYING TO ACCELERATE WHILE MERGING ONTO A HIGHWAY OR AT A TRAFFIC STOP THE CAR WILL SHUDDER, PAUSE, JERK FORWARD OR PAUSE.

THERE HAVE BEEN SEVERAL INCIDENTS WHERE I HAVE NEARLY BEEN IN A COLLISION BECAUSE OF THIS CLUTCH PROBLEM. THE JERK REACTION OF THE ACCELERATOR HAS CAUSED THE MOST CLOSE CALLS, AS IT CAN HAPPEN WHILE DECELERATING AS WELL. I HAVE BROUGHT THIS ISSUE TO MY LOCAL DEALER'S ATTENTION  AND HAVE HAD IT IN THE SHOP FOR A TOTAL OF 3 WEEKS OR MORE WITHIN A 6 WEEK PERIOD RECENTLY. BOTH TIMES I WAS TOLD THE CLUTCH SYSTEM WAS RESET AND HAD TO RE-ADAPT TO MY DRIVING, ONLY TO HAVE THE PROBLEM START AGAIN WITHIN A DAY OR TWO UNEXPECTEDLY. I HAVE TO BRING MY CAR IN YET AGAIN FOR THIS SAME ISSUE.

c.   (2012 Ford Fiesta 12/07/2013) THE VEHICLE HAS SERIOUS TRANSMISSION ISSUES. IN LOW GEARS IT OFTEN LURCHES, SHAKES, AND STALL OUT AS IF IT'S GOING TO DROP THE GEAR. THERE IS A LOUD GRINDING/RATTLING SOUND WHEN THE CAR SHIFTS. IT FEELS VERY UNSAFE DRIVING IN STOP AND GO TRAFFIC OR IN CITY CONDITIONS.  THE ISSUES WITH THE LURCHING GEARS AND DROPPED GEARS ALSO MAKE IT VERY DIFFICULT TO ACCELERATE QUICKLY. THIS MAKES MERGING ONTO A HIGHWAY UNSAFE. *TR

d.   (2012 Ford Fiesta 08/29/2013) THE TRANSMISSION IN MY 2012 FORD FIESTA SEEMS FAULTY. WHEN DRIVING THE CAR I DO NOT FEEL SAFE AND AT TIMES FEEL LIKE THE CAR "HAS A MIND OF ITS OWN". THERE ARE TIMES WHEN I TRY TO SLOW DOWN WHEN COMING TO A STOP LIGHT, ETC. AND THE CAR SURGES FORWARD AS THE RPM DIAL SPIKES. THERE ARE OTHER TIMES WHEN TRYING TO CHANGE LANES OR PULL OUT OF THE STREET AND I NEED TO ACCELERATE QUICKLY THE CAR WILL NOT ACCELERATE AS I SHOULD, PUTTING ME IN THE PATH OF AN ONCOMING CAR. WHILE GOING A CONSISTENT SPEED ON A STRAIGHT ROAD THE CAR WILL JERK, AS IF I'M ADJUSTING A MANUAL TRANSMISSION. I'VE BROUGHT THE CAR TO FORD AND WAS TOLD THIS WAS "NORMAL" FOR THE CAR. IT SEEMS THAT MYSELF AND OTHERS ARE HAVING THIS ISSUE AND HOW IT HAS NOT BEEN DEEMED A SAFETY ISSUE WITH REPERCUSSION OF A RECALL IS BEYOND ME.

**2013 Ford Fiesta NHTSA Complaints:**

a.   (2013 Ford Fiesta 11/12/2014) THE CAR IS UNSAFE!!! ITS JERKS, SHAKES, ROLLS BACK, ACCELERATES ON ITS OWN AND THE TRANSMISSION MAKES WEIRD SOUNDS. A FEW DAYS AGO I TOOK IT IN BECAUSE IT WOULDN'T MOVE. THAT WAS THE SECOND TIME I HAD TAKEN IT IN FOR THAT ISSUE. I PICKED THE CAR UP MONDAY NIGHT AND TUESDAY IT WAS BACK IN THE SHOP. THE CAR STALLED IN MID TURN, ALMOST CAUSING ME TO

GET INTO AN ACCIDENT. I AM NOW AFRAID TO DRIVE MY CAR. FORD KNOWS THE VEHICLE NEEDS TO BE RECALLED. INSTEAD OF DOING SO, THEY EXTEND THE WARRANTY IN A EFFORT TO MAKE CUSTOMERS HAPPY. IN THE MEANTIME THE PROBLEM ISN'T BEING SOLVED. THEY ARE WASTING COUNTLESS MANHOURS ON A SITUATION THAT ISN'T GOING AWAY.

b.   (2013 Ford Fiesta 09/18/2014) THE AUTOMATIC TRANSMISSION CAUSES PROBLEMS, AND FORD HAS WORKED ON IT MANY TIMES BUT HASN'T FIXED IT.THEY REPLACE THE 'CLUTCH' IN THE A/T AND REPROGRAM THE A/T, BUT THE PROBLEM REMAINS. THE TRANSMISSION/CLUTCH SLIPS; CAUSING THE CAR TO BRIEFLY LOSE POWER, THEN THE CAR LURCHES FORWARD WHEN THE A/T GRABS 3-4 SECONDS LATER. THE DANGER IS TWO-FOLD. A) WHEN YOU ARE STOPPED - FOR EXAMPLE - AT A 4-WAY STOP SIGN. YOU START TO GO, THE CAR LOOSES POWER AND SLOWS DOWN; SOMEONE ELSE THINKS YOU ARE YIELDING TO THEM AND THEY GO - MEANWHILE, THE FIESTA'S A/T GRABS AND SUDDENLY LURCHES FORWARD. THIS HAS CAUSED A NEAR CRASH SEVERAL TIMES. B) WHEN YOU ARE AT A STOP SIGN OR STOP LIGHT WITH A CAR BEHIND YOU. WHEN SAFE, YOU START TO MOVE FORWARD, THE CAR LOSES POWER AND SLOWS, AND THE CAR BEHIND YOU ENDS UP SLAMMING ON ITS BRAKES TO AVOID HITTING YOU. THIS HAS LED TO SOME NEAR MISSES. THE CAR IS UNSAFE. THANK YOU.

c.   (2013 Ford Fiesta 09/01/2014) I JUST BOUGHT A USED 2013 FORD FIESTA WITH ABOUT 43-44,000 MILES ON IT. I DROVE THE CAR OFF THE AUTHORIZED DEALER'S LOT ON YESTERDAY 8/31/2014. THE FIRST THING THAT I NOTICED WAS, AS I ENTERED THE HIGHWAY, THE CAR HAD TROUBLE GETTING UP TO SPEED WITH THE FLOW OF TRAFFIC. LATER ON THE SAME DAY PULLING OUT OF AN ESTABLISHMENT TO ENTER THE MAIN ROAD I PRESSED THE ACCELERATOR AND THE CAR JERKED AND ACTED LIKE IT WAS GOING TO STALL OUT. THEN IT LUNGED FORWARD INTO THE STREET! HAD THERE BEEN ONCOMING TRAFFIC, THIS COULD HAVE CAUSED AN ACCIDENT WITH ME AND MY FAMILY IN THE CAR! THE CAR HESITATES TO SHIFT GEARS CORRECTLY. THE RPM HAND REVS UP REAL HIGH ON A LIGHT PUSH ON THE GAS PEDAL AND DOESN'T COME DOWN EFFICIENTLY SO THE CAR JERKS WHEN IF FINALLY "CATCHES". I'VE HAD THIS CAR FOR ONE DAY! THIS IS A DANGER AND SOMETHING NEEDS TO BE DONE!

d.   (2013 Ford Fiesta 06/28/2014) MY 2013 FORD FIESTA SE HATCHBACK HAS ACCELERATION ISSUES I BELIEVE WILL CAUSE ME TO BE IN AN ACCIDENT. WHILE ACCELERATING INTO TRAFFIC THE VEHICLE CAN DOWN SHIFT OR "BOG DOWN", CAUSING ME TO LOSE

ACCELERATION AND NEARLY CAUSING COLLISIONS. HAD IT NOT BEEN FOR THE DEFENSIVE DRIVING OF THE OTHER DRIVERS I DEFINITELY WOULD HAVE BEEN IN AN ACCIDENT

e.  (2013 Ford Fiesta 04/27/2014) I WAS STOPPED AT AN INTERSECTION WAITING ON TRAFFIC. FINALLY GOT A SMALL GAP AND HIT THE ACCELERATOR TO PROCEED INTO THE MIDDLE OF THE INTERSECTION, IT CLATTERED, THEN HESITATED AND WOULD NOT GO. AFTER ABOUT 3 SECONDS, WHICH FELT LIKE ETERNITY WHEN YOU CARS COMING TOWARDS YOU ON BOTH SIDES, IT FINALLY WENT. NO ACCIDENT, BUT WAY TOO CLOSE FOR MY COMFORT. I'VE HAD THIS CAR AT THE DEALERSHIP FOUR DIFFERENT TIMES FOR THIS SAME PROBLEM. THEY HAVE REPROGRAMMED THE TRANSMISSION EVERY TIME BUT IT STILL DOES THE SAME THING. ABOUT FOUR WEEKS AGO I WAS ON THE HIGHWAY AND THE CAR LOST COMPLETE POWER, ACTED AS IF IT WERE IN NEUTRAL. I HAVE FILED A COMPLAINT WITH FORD BUT THEY SAY IT IS WITHIN THEIR TOLERANCE. I BOUGHT THIS CAR FOR MY DAUGHTER BUT I AM AFRAID TO LET HER DRIVE WITHOUT ME. WHEN I FINALLY HAVE TO GIVE THIS CAR TO MY SIXTEEN YEAR OLD DAUGHTER, AND SHE LOSES HER LIFE BECAUSE OF THIS TRANSMISSION, IS WILL NOT BE TOLERABLE. *TR

f.  (2013 Ford Fiesta 03/27/2014) I PURCHASED MY 2013 FIESTA NEW OFF THE CAR LOT. IT WAS THE BIGGEST MISTAKE EVER. IT HAS BEEN IN THE REPAIR SHOP TWICE FOR CLUTCH REPLACEMENTS. I WAS IN AN ACCIDENT THE LAST TIME BECAUSE IT HESITATED AND THEN TOOK OFF AND RAN IN TO THE CAR IN FRONT OF ME. FORD DIDN'T CARE ABOUT THE ACCIDENT. I HAD TO ARGUE WITH THEM TO GET A CAR TO DRIVE WHILE THEY FIXED MY CAR YET AGAIN. IT HAS AGAIN STARTED HESITATING AND THEN EXCELLING QUICKLY AND I DON'T KNOW WHAT TO DO ANYMORE. I BOUGHT A NEW CAR FOR RELIABILITY AND THIS IS FAR FROM RELIABLE. IT IS VERY VERY LOUD ALSO. *TR

g.  (2013 Ford Fiesta 12/18/2013) TWO PROBLEMS: 1) WHEN TRYING TO ACCELERATE GENTLY FROM A STOP (AS IN A 4-WAY STOP SITUATION) THE VEHICLE ENGAGES VIOLENTLY AND SURGES FORWARD. I HAVE TO REACT QUICKLY IN THIS SITUATION AND SLAM ON THE BRAKES TO AVOID HITTING THE CAR IN FRONT OF ME. 2) WHEN TRYING TO ACCELERATE TO MERGE INTO TRAFFIC, THE CAR REVS (TRANSMISSION MAKES A LOT OF NOISE) BUT DOES NOT ACCELERATE. I HAVE HAD DANGEROUS SITUATIONS WHEN I COULD NOT ACCELERATE AND CARS WERE COMING UP ON ME QUICKLY. *TR

FIRST AMENDED CLASS ACTION COMPLAINT

h.  (2013 Ford Fiesta 11/16/2013) FROM A STOP SIGN MAKING A RIGHT TURN ONTO A HIGHWAY MY 2013 FORD FIESTA NOW DECIDES TO MAKE LOUD GRINDING NOISES FROM THE 6 SPEED AUTO TRANSMISSION WHEN ACCELERATE TO NORMAL HIGHWAY SPEED HESITATES AND ALMOST WAS REAR ENDED FROM THE VEHICLE BEHIND ME HAD TO QUICKLY PULL TO THE RIGHT OF THE ROAD BEFORE MERGING BACK ON THE HIGHWAY . HAVE TAKEN TO THE DEALER THREE TIMES FOR UNUSUAL TRANSMISSION SLIPPAGE, AND NOISES WAITING ON A BACK ORDER DUAL CLUTCH KIT PART ,1700 HUNDRED ON BACK ORDER WAS TOLD MAY TAKE UP TO 6 MONTHS FOR THIS PART TO ARRIVE. *TR

i.  (2013 Ford Fiesta 10/09/2013) WHILE PULLING OUT OF A GAS STATION PARKING LOT INTO TRAFFIC THE TRANSMISSION SPUTTERED AND PAUSED FOR ABOUT 2 SECONDS ALMOST CAUSING THE ON COMING TRAFFIC TO HIT MY CAR. THERE WAS ALMOST NO ROOM FOR THE ON COMING CAR TO GO AROUND ME. NEAR MISS FROM BEING HIT ON THE DRIVERS DOOR FROM THE FRONT OF THE ON COMING CAR. *TR

j.  (2013 Ford Fiesta 09/21/2013) AT A GREEN LIGHT ABOUT TO TURN LEFT I STARTED MY TURN. M Y TRANSMISSION PAUSE BEFORE MAKING THE TURN. THE ON COMING CAR HAD TO SWERVE TO MISS ME AND ALMOST CRASHED INTO ANOTHER CAR. SINCE THERE WAS NO CONTACT ALL CARS CONTINUED WITH OUT STOPPING.

k.  (2013 Ford Fiesta 07/28/2013) I ALMOST DIED IN THIS CAR TODAY. I RENTED IT FOR MY TRIP IN MAUI. IT WAS PRACTICALLY NEW WITH ONLY 10,000 MILES ON IT, SO THERE SHOULD NOT HAVE BEEN ANYTHING WRONG, EVEN IF THE PEOPLE THAT RENTED IT BEFORE ME DROVE IT HORRIBLY. TODAY I DROVE IT INTO THE HILLS (UPCOUNTRY MAUI). I WAS ON A ROAD WITH A CLIFF ON THE LEFT SIDE AND A DRIVEWAY ON THE RIGHT. I PULLED INTO THE DRIVEWAY, WHICH WAS A HILL GOING UP, AND EVERYTHING WAS INITIALLY FINE, THE CAR WAS GOING UP THE HILL JUST FINE, BUT A LITTLE OVER HALFWAY UP THE HILL THE CAR STOPPED ACCELERATING/MOVING. I WAS PRESSING THE GAS PEDAL TO THE FLOOR BUT IT HAD NO RPMS AND THE CAR BEGAN ROLLING BACKWARDS. SUDDENLY, THE TRANSMISSION (?) KICKED IN AND THE CAR LURCHED FORWARD AT 20MPH. THANKFULLY I WAS ABLE TO CONTROL IT AND MAKE IT TO THE TOP OF THE HILL, WHERE THERE WAS A PARKING LOT. HAD THE TRANSMISSION NOT KICKED IN AT THAT SECOND, THE CAR WOULD HAVE ROLLED ALL THE WAY BACK DOWN THE DRIVEWAY AND OFF THE CLIFF. THERE IS ABSOLUTELY NO WAY THAT I WAS PRESSING THE BRAKE PEDAL OR NOT PRESSING

THE GAS. I WAS GOING UP A HILL AND OBVIOUSLY DIDN'T WANT TO ROLL BACK, SO OF COURSE I WOULD HAVE MY FOOT PRESSED DOWN ON THE ACCELERATOR. THIS IS FURTHER EXHIBITED BY THE FACT THAT THE CAR SUDDENLY LURCHED FORWARD AFTER A FEW SECONDS OF NOT MOVING, SO I DEFINITELY HAD MY FOOT ON THE ACCELERATOR THE WHOLE TIME. I HAVE READ ONLINE HUNDREDS OF PEOPLE THAT HAVE ISSUES WITH THE CAR NOT ACCELERATING/MOVING WHILE PRESSING ON THE GAS, SO THIS IS NOT AN ISOLATED ISSUE. WHAT IF THIS HAPPENS TO SOMEONE ELSE WHO IS RIDING IT IN THE HILLS OR MOUNTAINS?  PLEASE DO SOMETHING ABOUT THIS CAR BEFORE SOMEONE IS SERIOUSLY HURT. *TR

**2014 Ford Fiesta NHTSA Complaints:**

a.   (2014 Ford Fiesta 01/15/2015) BOUGHT CAR ON JUNE 1 2014. TRANSMISSION SHUTTERS (SLIPS) FROM 1ST TO 3RD GEAR. TRY TO ACCELERATE AND IT SHUTTERS (SLIPS) FROM GEAR TO GEAR. COULD BE A SAFETY ISSUE AS GOING INTO TRAFFIC OR A LIGHT IT HESITATES WHICH COULD LEAD TO AN ACCIDENT. AFTER READING ARTICLES ON THIS ISSUE WITH THE TRANSMISSION (FIESTA'S & FOCUS'S) THIS SHOULD BE LOOKED INTO AS A SAFETY ISSUE BY THE NHTSA. FORD SEEMS TO NOT KNOW HOW TO FIX CORRECTLY. ADJUST COMPUTER, PUT NEW CLUTCH PADS ON, ETC. SEEMS NO CLEAR FIX TO PROBLEM. I FEEL THIS SHOULD BE CONSIDERED FOR A RECALL

b.   (2014 Ford Fiesta 12/31/2014) I HAVE BEEN TAKING OFF AFTER STOPPING AND THE TRANSMISSION OR FUEL INJECTION MISSES CAUSING THE VEHICLE TO NOT ENGAGE THE DRIVE TRAIN JUST RIGHT. THE VEHICLE HESITATES, LURCHES, AND SHUTTERS. THE VIBRATION IS BAD AND I'M WORRIED IF I TAKE OFF FROM A STOP LIGHT OR SIGN, THE VEHICLE DOES NOT ENGAGE THE DRIVE TRAIN, I MIGHT BE HIT BY ANOTHER VEHICLE BECAUSE I CANNOT GET THE VEHICLE OUT OF THE PATH OF TRAFFIC DUE TO THE HESITATION. THIS IS A VERY SERIOUS SAFETY ISSUE AND SOMETHING MUST BE DONE TO CORRECT THE PROBLEM.

c.   (2014 Ford Fiesta 11/11/2014) A COUPLE MONTHS AFTER BUYING MY NEW CAR, I NOTICED THE TRANSMISSION WOULD START TO SHUDDER AND/OR BUCK WHEN ACCELERATING AFTER A STOP. CONTACTED THE DEALERSHIP AND HAVE BROUGHT IT IN 3 TIMES WITH NO ONE AT THE DEALERSHIP BEING ABLE TO "RECREATE" THE PROBLEM AND THEREFORE THEY COULDN'T FIX IT. THEY ALSO SAID THAT BECAUSE OF THE TYPE OF TRANSMISSION, THE PROBLEMS I WAS

DESCRIBING ARE TO BE EXPECTED. HOW COULD A COMPANY RELEASE A TRANSMISSION THAT IS "SUPPOSED" TO BUCK AND SHUDDER? PROBLEM HAS CONTINUED TO GET WORSE AND I HAVE NOW EXPERIENCED SEVERAL INCIDENTS THAT I FEEL ARE VERY DANGEROUS. ONE OCCURS WHEN I APPROACH A STOP AND I AM APPLYING THE BRAKES, THE CAR WILL REV UP AND ACCELERATE   ON ITS OWN, ALMOST CAUSING ME TO GO INTO TRAFFIC. ANOTHER INCIDENT IS WHEN I AM AT A YIELD AND DON'T COME TO A COMPLETE STOP, THEN ACCELERATE TO MERGE WITH TRAFFIC, THE TRANSMISSION SKIPS/STUTTERS/SHUDDERS DELAYING MY ACCELERATION AND MAKING THE MERGE DANGEROUS. THE PROBLEM IS INTERMITTENT, AND DOES NOT OCCUR AT EVERY STOP/YIELD. I AM AFRAID TO DRIVE MY CAR BECAUSE I NEVER KNOW WHAT OR WHEN IT WILL HAPPEN AGAIN.

d. (2014 Ford Fiesta 10/26/2014) WHEN WE BOUGHT THE VEHICLE THEY SAID THERE WOULD BE SOME ABNORMAL  NOISES IN THE TRANSMISSION DURING BREAK IN (1000 MILES) AND IT SHOULD GO AWAY. THE NOISES DIDN'T START UNTIL AROUND 4500 MILES. ON JULY 4, 2014 WE TOOK A 600 MILE ROUND TRIP (MILEAGE AT THIS TIME IS 7200). AT APPROXIMATELY HALF WAY THROUGH THIS TRIP WE START SMELLING BURNT OIL. THE VEHICLE THEN STARTED TO SHUDDER AND SHACK WHILE ACCELERATING FROM FIRST TO SECOND AND SECOND TO THIRD GEARS AND DIDN'T STOP. TOOK THE VEHICLE TO THE DEALER AND THEY REPROGRAMED THE SOFTWARE AND SAID SOME SLIPPING IS NORMAL OPERATION  FOR THIS TRASMISSION. THIS WORKED FOR THREE DAYS THEN IT WENT BACK TO SHUDDERING AND SHACKING BUT WORSE THAN BEFORE. 2 DAYS LATER WE ALMOST GOT HIT WHILE TRYING TO PULL OUT INTO TRAFFIC BECAUSE THE TRANSMISSION WOULD NOT SHIFT AND POWER WASN'T THERE.

e. (2014 Ford Fiesta 08/01/2014) CAR JERKS AND SHAKES VERY HARD AT LOW AND HIGH SPEEDS. TAKES OFF BY ITSELF WITH A FAST JERK AND ROLLS BACKWARDS  WHEN AT A COMPLETE STOP. CAR ACTUALLY HAS LOST POWER WHILE TRY TO EXCELLERATE ONTO A MAJOR HIGH WAY.I WAS ALMOST HIT BY A TRACTOR TRAILER DUE TO THIS ISSUE. I'M VERY SCARED TO DRIVE THIS CAR AND VERY MUCH REGRET MY VERY FIRST PURCHASE OF A BRAND NEW CAR.

f. (2014 Ford Fiesta 07/20/2014) ISSUES WITH THIS VEHICLE BEGAN AS SOON AS WE GOT IT. CAR CONSTANTLY STUTTERS LIKE IT'S ABOUT TO STALL (WAS TOLD BY SALESMAN THAT IT WAS BECAUSE CAR WAS BRAND NEW AND ONCE WE "BROKE IT IN' THAT WOULD GO AWAY). IT HAS NOT. DOES NOT ACCELERATE  WHEN IT

SHOULD AND DOESN'T DECELERATE  WHEN IT SHOULD, NO MATTER HOW HARD OR SOFT YOU PRESS THE PEDALS. CAR SEEMS TO HAVE A MIND OF IT'S OWN. LIKES TO ACCELERATE  WHEN HAVE BRAKE PRESSED, HAVE ALMOST REAR-ENDED  CARS IN FRONT BECAUSE OF IT'S LURCHING FORWARD. WHEN USING SPORT MODE, CAR WOULD NOT HAVE ANY MORE POWER, BUT ENGINE WOULD REDLINE. STRONG BURNING SMELL ALSO. ONCE CAR FINALLY GOT MOVING, IT WAS VERY DIFFICULT TO GET IT TO SLOW DOWN. YOU CAN PUSH BRAKE PEDAL TO THE FLOOR BUT CAR IS STILL GOING - AND FIGHTING YOU TO KEEP GOING. DEALER UPGRADED  SOFTWARE - WHICH SEEMED TO HELP FOR THE FIRST FEW DAYS - AND TOLD US NOT TO USE THE SPORT MODE ANYMORE, WHICH WE DO NOT. DEALER STATED ALL COMPLAINTS WERE NOT ISSUES, THAT IS HOW THE CAR WORKS DUE TO THE TYPE OF ENGINE IT HAS IN IT. FIRST TIME FORD BUYER, FIRST BRAND NEW CAR IN A VERY, VERY LONG TIME. CAR IS DRIVEN TO AND FROM WORK 56 MILES EVERYDAY, PLUS LEISURE. FEEL VERY INSECURE DRIVING CAR. CAR IS NOT SAFE AND FORD NEEDS TO BE PRESSURED  TO FIX THESE ISSUES OR STOP MAKING THESE TYPE OF ENGINES!

g.   (2014 Ford Fiesta 07/19/2014) TRANSMISSION IS VERY JERKY -CAR HAS A LOT OF HESITATION  AFTER ACCELERATING FROM A LOW SPEED OR A STOP -SHUDDERING AND GRINDING NOISE WHEN STOPPING AND ACCELERATING WHEN I FIRST BOUGHT THE CAR THESE ISSUES WERE MINOR AND I WAS TOLD THEY WOULD GO AWAY ONCE THE CAR GOT USED TO MY STYLE OF DRIVING BUT NOW THEY HAVE BECOME MORE SEVERE AND HAPPENING MORE FREQUENTLY MAKING THIS CAR A SAFETY ISSUE. WHEN CHANGING LANES AND MAKING TURNS THE CAR IS VERY UNPREDICTABLE AND MAY SOON CAUSE AN ACCIDENT. I HAVE TAKEN IT INTO FORD NUMEROUS TIMES AND AM ALWAYS TOLD THIS IS HOW THE CAR RUNS AND THESE ARE NORMAL FUNCTIONS FOR THE TRANSMISSION. I BELIEVE THESE CARS NEED TO BE RECALLED AND OFF THE ROAD BEFORE.

**2012 Ford Focus NHTSA Complaints:**

a.   (2012 Ford Focus 01/20/2015) I WAS DRIVING IN A RESIDENTIAL  NEIGHBORHOOD AND APPROACHING A FOUR WAY STOP SO NOT GOING FAST. MY CAR STOPPED ACCELERATING AND THEN JERKED FORWARD CAUSING ME TO HAVE TO TURN OFF THE ROAD TO AVOID GOING THROUGH THE STOP SIGN. I INSTEAD HIT THE STOP SIGN. THE CAR HAS TRANSMISSION ISSUES THAT HAVE NOT YET BEEN RESOLVED.

b.   (2012 Ford Focus 04/09/2014) THIS IS THE FIRST OF 2

ACCIDENTS, BOTH CAUSED BY VEHICLE SURGING FORWARD AS I WAS PULLING INTO A PARKING SPACE. THIS FORM WOULD NOT ALLOW ME TO PUT BUT 1 ACCIDENT DATE. SECOND MORE SERIOUS ACCIDENT, DATE 02/08/2014, WILL BE LISTED SEPARATELY. AS I WAS TURNING INTO A PARKING SPACE WITH FOOT ON BRAKE THE CAR SUDDENLY LURCHED FORWARD MOUNTING THE CONCRETE PARKING STOP AND ENDED UP AGAINST A TREE IN THE MEDIAN. FLOORED THE BRAKE PEDAL BUT ENGINE CONTINUED  TO REV. DAMAGE TO UNDER SIDE OF CAR TOTALED $3494. FORD DEALERSHIP  CHECKED THE COMPUTER  AND FOUND ENGINE OVERSPEED  CODE PO219. COULD NOT DUPLICATE INCIDENT AND GAVE CAR BACK TO ME. 3384 MILES LATER THE 2012 FORD FOCUS REPEATED THE LURCHING WITH MORE DAMAGE AND PERSONAL INJURY. *TR

c.  (2012 Ford Focus 01/21/2014) MY CAR HAS ALMOST GOTTEN ME IN 3 ACCIDENTS AND IT ROLLS BACK ON HILLS I WAS PULLING INTO A DRIVE WAY AND IT STARTED TO ROLL BACK THEN IT SLOWED DOWN AND THERE WAS A LOAD NOISE AND WE STARTED ROLLING BACKWARDS  IT WAS JUST A DRIVE WAY. THE CAR HAS ABSOLUTELY  NO POWER AT ALL IT STUTTERS AND WHEN YOU ARE DRIVING IN BUSY PLACES AND YOUR CAR WONT PICK UP ENOUGH TON ENTER ON THE HIGHWAY OR FREEWAY ITS SCARY AND ITS UNSAFE IT WILL SHAKE THE WHOLE CAR WHEN IT PULLS BACK AND STUTTERS. IT IS AWFUL AND I WENT ON A 3 HOUR DRIVE TO GO ON VACATION I ACTUALLY RENTED A CAR INSTEAD OF TAKING MY BRAND NEW CAR THAT I GOT TO LAST ME YEARS FRO NOW WAS THE PLAN IF IT MAKES IT ANOTHER 1 YEAR I WILL BE SURPRISED VERY DANGEROUS  FORD. *TR

d.  (2012 Ford Focus 06/18/2012) WAS TOLD THIS CAR HAD "AUTOMATIC  TRANSMISSION". AFTER A FEW HUNDRED MILES ON IT, I NOTICED THE TRANSMISSION SHIFTED SPORADICALLY AND WITH NO PREDICTION. ENGINE SHUDDERED,  CAR LOST POWER AND WAS NOT SAFE TO DRIVE. THE KEY HERE IS NO PREDICTION  AS TO HOW THE CAR WILL REACT WHEN UNDER ACCELERATION. TOOK TO DEALER AND WAS TOLD "THIS ISN'T AN AUTOMATIC TRANSMISSION - IT'S A COMPUTER-  CONTROLLED MANUAL THAT HAS TO LEARN HOW YOU DRIVE". DEALER UPLOADED  A COMPUTER  UPDATE FROM FORD. THE NEXT HUNDRED MILES OF DRIVING ALMOST CAUSED NUMEROUS ACCIDENTS DUE TO LACK OF ACCELERATION AND UNEVEN PERFORMANCE. 6/4/2012 I TRIED TO MERGE INTO TRAFFIC AND CAR REFUSED TO SPEED UP. I ALMOST CAUSED A MAJOR ACCIDENT, BUT NUMEROUS DRIVERS SLAMMED ON THEIR BRAKES AND/OR SWERVED AND AVERTED MULTIPLE COLLISIONS.

FIRST AMENDED CLASS ACTION COMPLAINT

TOOK THE CAR TO DEALER 6/5/2012 AND TOLD THEM WHAT HAPPENED. WAS TOLD BY HEAD TECH "IT JUST HAS TO GET USED TO HOW YOU DRIVE". I TOLD HIM THERE WERE THREE DIFFERENT PEOPLE DRIVING THIS FOCUS. HE SAID WE CAN'T, BECAUSE THAT WOULD JUST END UP TOTALLY "CONFUSING" THE COMPUTER. AS THE CAR IS TOO DANGEROUS  TO DRIVE, IT IS STILL AT THE DEALER. MILES ON VEHICLE ARE UNDER 800.

e.  (2012 Ford Focus 03/09/2012) MY FORD FOCUS SEL 2012 HAS BEEN EXPERIENCING SHUDDERING FEELINGS WHEN ACCELERATING FROM STOP. IT FEELS AS IF THE TRANSMISSION IS ABOUT TO STALL AND THEN IT KICKS BACK UP AND JOLTS MY CARS BACK AND FORTH FOR SEVERAL SECONDS BEFORE RESUMING NORMAL SPEED AFTER 10 MPH. THESE SEVERAL SECONDS ARE VITAL WHEN YOU ARE DEALING WITH FAST TRAFFIC IN CALIFORNIA OR ANYWHERE ELSE FOR THAT MATTER. THIS CREATED A DELAY IN THE ACCELERATION TIME, ALMOST CAUSING AN ACCIDENT WITH ONCOMING TRAFFIC. I HAVE CONTACT SEVERAL FORD OFFICIALS ABOUT THIS AND THEY KEEP SAYING THAT IT IS NORMAL AND THAT THERE IS A BREAK IN PERIOD. WHY WAS I NOT MADE AWARE OF THIS WHEN I PURCHASED  THE CAR? THIS IS A SERIOUS SAFETY HAZARD AND FORD IS JUST EXCUSING IT UNTIL MY WARRANTY PERIOD IS UP. TWO OF MY FRIENDS BOUGHT THE SAME CAR AND IS EXPERIENCING THE SAME ISSUE. THIS IS NOT AN ISOLATED INCIDENT AND I WOULD LIKE TO SEE PROPER ACTION FROM FORD TO ADDRESS THIS ISSUE PROFESSIONALLY. *TR

f.  (2012 Ford Focus 09/22/2011) THIS VEHICLE HAS SOME SCARY AND SOMETIMES DANGEROUS  TRANSMISSION ISSUES. IT'S NOT LIKE A NORMAL AUTOMATIC  WITH A TORQUE CONVERTER,  SO SOME ROUGHNESS  IS EXPECTED. BUT, THIS CAR OFTEN GRINDS GEARS, SLIPS, GRABS AND LUNGES, AND ALSO ROLLS BACK ON INCLINES. I HAVE NEARLY BEEN IN SEVERAL ACCIDENTS WHEN I HAVE TRIED TO ACCELERATE INTO AN INTERSECTION AND THE VEHICLE DOESN'T RESPOND TO THE ACCELERATOR BEING DEPRESSED COMPLETELY TO THE FLOOR. IT SOMETIMES ACTS AS IF YOU ARE TRYING TO START FROM A STOP IN 3RD OR 4TH GEAR. FORD MOTORS HAS CONTINUALLY SAID THESE PROBLEMS ARE NORMAL AND THE VEHICLE NEEDS SOME BREAK-IN TIME. WELL, THIS VEHICLE NOW HAS OVER 6,000 MILES. I DON'T THINK IT'S GOING TO GET BETTER. IF I GET INTO AN ACCIDENT BECAUSE OF THIS, THERE ARE GOING TO BE SOME SERIOUS PROBLEMS TO HANDLE WITH FORD. I KNOW I'M NOT ALONE IN THESE PROBLEMS. I HAVE BEEN ON FORUMS WITH MANY PEOPLE HAVING THE SAME ISSUES. *TR

**2013 Ford Focus NHTSA Complaints:**

a.  (2013 Ford Focus 01/16/2015) MY FORD FOCUS SHUDDERS WHEN ACCELERATING AND LURCH FORWARD WITHOUT WARNING WHEN I'M SLOWING DOWN OR ACCELERATING. I HAVE HAD IT REPAIRED ONCE AND NEED TO GO BACK AGAIN. HOW MANY TIMES DO I HAVE TO GO WITHOUT A CAR BECAUSE THE DEALERSHIP ONCE AGAIN HAS MY CAR IN FOR REPAIRS DUE TO A MANUFACTURER TRANSMISSION DEFECT. ALSO, WHAT PREMATURE INTERNAL WEAR IS THIS ALL CAUSING? WILL I NEED TO REPLACE PARTS BEFORE THEY WOULD NORMALLY NEED REPLACING OR FIXING?! I'M WORRIED THE CAR WILL BREAKDOWN OR THERE WILL BE A CRASH WHERE SOMEONE GETS SERIOUSLY HURT. IT HAS BEEN BROUGHT TO MY ATTENTION THAT FORD KNEW ABOUT THE DEFECT AND CONCEALED THE INFORMATION AND THERE ARE NUMEROUS LAW SUITS OUT THERE FOR THIS PARTICULAR ISSUE. I REALLY DON'T FEEL SAFE DRIVING THE CAR ANYMORE. I CAN'T REMEMBER THE SPECIFIC DATE OF THE FIRST INCIDENT BUT I CAN FIND OUT FROM THE DEALERSHIP IF NECESSARY.

b.  (2013 Ford Focus 10/06/2014) TOTAL LOSS OF THROTTLE, STALLING IN TRAFFIC, SHUDDERING AND ERRATIC SHIFTING WITH THE FORD POWERSHIFT TRANSMISSION. SINCE PURCHASING CAR NEW IN 2013, I HAD PROBLEMS WITH THE POWERSHIFT TRANSMISSION, INITIAL PROBLEMS WAS A NOISE THAT SOUNDED LIKE THE MUFFLER WAS DRAGGING THE ROAD, PROBELMS GOT WORSE AS MILEAGE INCREASED. RETURNED THE CAR TO SEVERAL DEALERS FOR DIAGNOSIS, WAS TOLD THAT THE TRANSMISSION IS OPERATING AS DESIGNED AND NO REPAIRS WERE ATTEMPTED. PROBLEM GOT WORSE AND I HAD EXPERIENCED TOTAL LOSS OF THROTTLE IN TRAFFIC ON SEVERAL OCCASIONS, CAR STALLED AND JERKED IN TRAFFIC CAUSING NECK TO SNAP BACK. AFTER REPEATED ATTEMPTS TO GET THE PROBLEM FIXED WITH TWO DIFFERENT FORD DEALERS, A CUSTOMER SATISFACTION LETTER CAME FROM FORD DETAILING ISSUES WITH POWERSHIFT TRANSMISSION. I HAD TO TAKE MY CAR INTO THE DEALER AGAIN, FOR DIAGNOSIS AND WAS TOLD THEY GOT IT THE TRANSMISSION TO FAIL THE THRESHOLDS AFTER 6 ATTEMPTS, WHICH WARRANTED REPLACEMENT OF THE CLUTCH PACK AND INTERNAL SEALS, SUPPOSEDLY A FAULTY DESIGN THAT ALLOWED OIL FROM THE GEARBOX TO LEAK INTO THE CLUTCH PACK CAUSING SLIPPAGE, NOISE AND ISSUES. FORD RETURNED THE CAR 5 DAYS LATER, ISSUES WENT AWAY FOR 3 WEEKS OR SO, AND HAVE STARTED TO REAPPEAR IN THE SAME FASHION AS WHEN THE CAR WAS PURCHASED NEW AND IS GETTING WORSE

EACH DAY, WITH OVER 1000 MILES ON THE CAR SINCE SERVICE. AS OF TODAY I HAVE EXPERIENCED SHUDDERING AND TOTAL LOSS OF THROTTLE IN TRAFFIC, A FEW TIMES WERE DANGEROUS IN PULLING OUT IN FRONT OF ONCOMING TRAFFIC THE CAR COULD HAVE CAUSED ME TO GET INTO AN ACCIDENT, ALSO LUNGES IN SLOW MOVING TRAFFIC. I AM AFRAID TO LET MY WIFE DRIVE THE CAR DUE TO THE BEHAVIOR OF THE TRANSMISSION AND SEE AGAIN I WILL SOON HAVE TO RETURN TO ANOTHER DEALER (#3) FOR CORRECTION

c. (2013 Ford Focus 09/13/2014) I'VE REPORTED  THIS ISSUE SEVERAL TIMES. IT IS GOING TO CAUSE AN ACCIDENT!! WHEN STOPPED AT A STOP LIGHT, OR STOP SIGN, THE CAR WANTS TO KEEP MOVING, EVEN THOUGH HEAVY BREAK PRESSURE IS BEING APPLIED. WHEN I AM AT A STOP LIGHT AND THE LIGHT TURNS GREEN TO MOVE FORWARD, THE CAR HESITATES TO MOVE, CAUSING THE VEHICLES BEHIND ME TO BLOW THEIR HORN! THERE IS NOTHING I CAN DO!! THIS CAR IS GOING TO CAUSE MYSELF OR OTHER OWNERS AN ACCIDENT WITH NO DOUBT IN MY MIND! THE HESITATION TO TAKE OFF WHEN I'M WANTING TO GET OUT OF THE WAY OF ONCOMING TRAFFIC, SCARES ME TO DEATH!!! SOMETHING NEEDS TO BE DONE BEFORE AN INNOCENT LIFE OR LIVES ARE LOST!!!

d. (2013 Ford Focus 08/20/2014) THE CAR IS EXPERIENCING TRANSMISSION PROBLEMS. IT SHUDDERS AND BOGS DOWN AS I AM ACCELERATING, AND OFTEN LURCHES FORWARD UNEXPECTEDLY. THE CAR MAKES A LOUD GRINDING NOISE WHEN SHIFTING THROUGH GEARS. THE PROBLEMS BEGAN IN LOW GEARS, BUT I AM NOW EXPERIENCING PROBLEMS AT ALL SPEEDS, INCLUDING LURCHING FORWARD. I HAVE TAKEN THE CAR BACK TO THE DEALERSHIP TWICE, ONLY FOR THEM TO TELL ME THIS IS A NORMAL OCCURRENCE. I AM AFRAID THE TRANSMISSION ISSUES WILL CAUSE AN ACCIDENT. I AM ALSO CONCERNED THAT THE GRINDING OF THE GEARS WILL CAUSE DAMAGE TO OTHER COMPONENTS OF MY VEHICLE.

e. (2013 Ford Focus 02/13/2014) I OWN A 2013 FORD FOCUS HATCHBACK TITANIUM MODEL. PURCHASED THE CAR IN JANUARY 2013. CURRENTLY  HAS 1100 MILES ON IT. CAR HAS A SIX-SPEED AUTOMATIC  TRANSMISSION THAT FORD HAS DUBBED "POWERSHIFT". TRANSMISSION IS VERY JITTERY AT ALL SPEEDS WHEN SHIFTING GEARS WHILE ACCELERATING. IT IS ALSO HESITANT TO SHIFT GEARS AND PICK UP SPEED. IT SEEMS LIKE SOMETHING IS GOING TO BREAK INSIDE THE ENGINE AND THE CAR JERKS WHEN SHIFTING GEARS. FROM A STANDING STOP THE CAR WILL START TO ROLL BACK WHEN YOU LET OFF THE BRAKE AND

STEP ON THE ACCELERATOR PEDAL. THIS IS AN ACCIDENT WAITING TO HAPPEN AND IS VERY DANGEROUS. *TR

**2014 Ford Focus NHTSA Complaints:**

a.  (2014 Ford Focus 12/29/2014) AT AROUND 24,000 MILES OUR 2014 FOCUS TRANSMISSION STARTING SHUTTERING DURING TAKE-OFF, MOST NOTABLY BETWEEN 1ST AND 2ND GEAR. IT IS UNPREDICTABLE AND SOMETIMES DANGEROUSLY HESITANT TO GET GOING. YOU HAD BETTER HOPE THE DAY YOU REALLY NEED THE CAR TO MOVE IT DOES; BUT NOT SURGE UNEXPECTEDLY. THE MOST FRUSTRATING POINT IS FORD SAYS IT'S NORMAL. NORMAL! I HAVE DRIVEN CARS WITH AUTOMATIC AND MANUAL TRANSMISSIONS FOR OVER 35 YEARS NEVER, HAS THIS BEEN NORMAL!!!

b.  (2014 Ford Focus 12/02/2014) ON AUGUST 27, 2014 I WAS IN THE PROCESS OF MAKING A RIGHT TURN FROM WEST BOUND ADAMS STREET TO NORTH BOUND 19TH AVENUE IN PHOENIX ARIZONA WHEN THE CAR STOPPED MOVING FORWARD. THE CAR ACTED AS IF IT WENT OUT OF GEAR; ENGINE WAS STILL RUNNING, BUT CAR WAS NOT MOVING FORWARD. THEN SUDDENLY THE CAR JERKED GOING FORWARD AT AN UNCONTROLLABLE SPEED. I WAS NOT ABLE TO CONTROL THE CAR AS IT DROVE INTO THE WRONG LANE OF TRAFFIC. I WAS FORTUNATE THERE WAS NOT ANOTHER CAR IN THAT OTHER LANE AT THAT TIME. I FILED A COMPLAINT ABOUT THIS CAR PREVIOUSLY, PRIOR TO THIS INCIDENT OCCURRING. I HAD READ THAT THERE ARE A LOT OF OTHER COMPLAINTS REGARDING THE FORD FOCUS AND THERE IS A CURRENT CLASS LAW SUIT IN THE STATE OF CALIFORNIA. FORD IS ATTEMPTING TO HIDE THEIR DEFECTIVE BY ATTEMPTING TO REPROGRAM THE COMPUTER AND DENING ANY DEFECT. THE CAR HAS TRANSMISSION PROBLEMS THAT IS PLACING THE PUBLIC IN DANGER OF LIFE THREATENING AND OR PHYSICAL INJURY.

c.  (2014 Ford Focus 10/16/2014) WHEN I STOP AT A STOP SIGN OR LIGHT AND THEN TAKE OFF AGAIN MY CAR SHUDDERS AS I TRY TO START DRIVING. THEN, WHEN I TRY TO ACCELERATE IT LAGS, AND I HAVE TO PUT THE PEDDLE ALL THE WAY TO THE FLOOR BEFORE IT WILL ACCELERATE EVEN THE SLIGHTEST BIT. THIS OCCURS EVERY SINGLE TIME I DRIVE MY CAR. OFTEN WHEN I ATTEMPT TO DRIVE OFF AND I PUT MY FOOT DOWN ON THE GAS PEDAL, THE TRANSMISSION SLIPS MIDWAY THROUGH AND AFTER THE INITIAL TAKE OFF THE CAR STALLS. THIS HAS ALMOST CAUSED ME TO GET HIT MULTIPLE TIMES. THIS IS NOT SAFE. PLEASE DO

SOMETHING ABOUT THIS BECAUSE IT IS A SERIOUS HAZARD.

d.   (2014 Ford Focus 09/27/2014) I BOUGHT MY CAR NEW BACK IN FEBURARY 2014. IT DOES ALL KINDS OF THINGS!! IT DOES NOT SHIFT RIGHT. IT JERKS, SLIPS, REVS HIGH. IF YOU NEED TO ACCELERATE IT DOESN'T EVER GEAR DOWN CORRECTLY, EITHER TOO MUCH OR NOT ENOUGH. IT HAS COMPLETELY STALLED AT INTERSECTIONS AND WOULD NOT MOVE. IT WOULD NOT EVEN REV UP. I HAD TO HAVE IT TOWED. IT HAS ACCELERATED INTO TRAFFIC AT A RED LIGHT, TWICE!! AND EACH TIME DID NOT HAVE BRAKES. MY CHILDREN WERE IN THE CAR AND IT WAS A NEAR MISS. MY CHILDREN COULD HAVE BEEN KILLED!! I HAVE HAD IT AT MY FORD DEALERSHIP 5 TIMES!!! YES 5 TIMES!!! EACH TIME IT RUNS FINE AND DOES NOT DO ANYTHING WRONG WHILE THEY ARE CHECKING IT OUT. THE MANAGER OF THE SERVICE DEPT STATES IT IS LIKE A SMARTPHONE AND ONCE YOU CUT IT OFF IT RESETS SO THIS IS PROBABLY WHY THEY CAN'T FIND ANYTHING WRONG WITH IT BY THE TIME THEY GET TO IT. I DO NOT FEEL SAFE DRIVING THIS CAR. BUT IT IS MY ONLY CAR. I DON'T KNOW WHAT TO DO. MY DEALERSHIP STATE THEY CANNOT DO ANYTHING. HELP!!!!!!!!!!!!!!!!!!!!!!!!!

e.   (2014 Ford Focus 09/02/2014) THE CAR HAS SEVERE TRANSMISSION ISSUES I HAVE ALMOST BEEN KILLED TWICE FOR BEING THROWN OUT INTO TRAFFIC ONCE AND TRYING TO PULL OUT ONTO A BUSY HIGHWAY. STOPPING AT A STOP SIGN OR RED LIGHT IS A NIGHTMARE, MY CAR WILL STOP FINE, BUT WHEN YOU GO TO TAKE OFF IT JUMPS AND THE TRANSMISSION SLIPS LEAVING YOU BASICALLY SITTING IN THE MIDDLE OF THE HIGH WAY BARELY GETTING ANYWHERE THEN ALL OF A SUDDEN YOUR CAR WILL TAKE OFF AND MAKE YOU LOOSE CONTROL. THE RPMS ARE ALL MESSED UP IF I'M DRIVING DOWN THE ROAD THE RPM HAND JUST DANCES ALL OVER THE PLACE THIS CAR IS A DEATH TRAP!! THANKS FORD FOR RUINING MY LIFE AND STICKING ME WITH THIS TRUE LEMON OF A CAR...

68.   The Transmission Defect poses an unreasonable safety risk for Class Members and other drivers and pedestrians.  A vehicle's responsiveness to driver input, such as acceleration and deceleration, and the ability of a vehicle's transmission to perform properly are critical to a vehicle's safe operation.  A defect that causes one or more of these negative characteristics poses a safety

1   hazard to the general public and increases the risk of automobile accidents.

2   **Ford Has Exclusive Knowledge of the Transmission Defect**

3   69.    Ford had superior and exclusive knowledge of the transmission

4   defect, and knew or should have known that the defect was not known or

5   reasonably discoverable by Plaintiffs and Class Members before they purchased

6   or leased the Class Vehicles.

7   70.    Plaintiffs are informed and believe and based thereon allege that

8   before Plaintiffs purchased or leased their Class Vehicles, and since at least

9   2010, Ford knew about the Transmission Defect through sources not available to

10  consumers, including: pre-release testing data; early consumer complaints about

11  the Transmission Defect to Defendant's dealers who are their agents for vehicle

12  repairs; warranty claim data related to the defect; aggregate data from Ford's

13  dealers; consumer complaints to the NHTSA and resulting notice from NHTSA;

14  dealership repair orders; testing conducted in response to owner or lessee

15  complaints; technical service bulletins ("TSBs") applicable to the Class

16  Vehicles; the existence of the defect in the substantially identical European and

17  Australian model vehicles; and other internal sources of aggregate information

18  about the problem.

19  71.    Only Ford had access to its pre-release testing data, aggregate data

20  from Ford's dealers, testing conducted in response to owner or lessee complaints,

21  and other internal sources of aggregate information about the problem.  Ford did

22  not make this information available to customers, and customers had no way to

23  access it.

24  72.    Before offering the vehicle for sale in the United States, Ford

25  offered the same vehicles, equipped with a similar dual-clutch transmission, in

26  Europe and Australia.  Although the United States version utilizes dry-clutches

27  as opposed to the European and Australian version's wet-clutches, Ford

28  acknowledged in its own press release that the transmission offered for sale in

the United States is a "derivative" of the design from the European and Australian models.[4]  European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

73.    In addition to having years of testing, analysis, and feedback from the prior European and Australian dual-clutch design, Ford also acknowledged in its own press releases the extensive pre-release testing and computer-aided modeling, simulation, and analysis it conducted before bringing the PowerShift Transmission to the United States market.[5]

74.    Ford was also aware of the Transmission Defect through the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticized the performance of the PowerShift Transmission.  Indeed, a July 15, 2011, *New York Times* review of the 2012 Ford Focus lambasted the PowerShift transmission's "jerks, pauses and lethargic acceleration."[6]  It also stated:

> So just as it seems that Ford has hammered a gee-whiz home run, we come to the automatic transmission, expected to be chosen by 90 percent of buyers.
>
> Dual-clutch designs are revered for sporty, fast shifts rivaling those of manual transmissions. **But Ford has calibrated the PowerShift to maximize fuel economy by seeking the highest gear possible as quickly as possible, which keeps the engine speed low.**
>
> The gearing is not a problem on the Interstate, but **can**

[4] *See* Autoblog.com, "Ford officially announces dual clutch PowerShift gearbox for 2010," http://www.autoblog.com/2009/01/21/ford-officially-announces-dual-clutch-powershift-gearbox-for-201/ (last visited February 4, 2015).

[5] *See* Ford.com, "Inside Info on the Ford PowerShift Six-speed Automatic Transmission," https://social.ford.com/our-articles/cars/fiesta/inside-info-on-the-ford-powershift-six-speed-automatic-transmission/ (last visited: January 15, 2015).

[6] *See* NYTimes.com, "Such a Slick Package, but Gearbox Is a Drag," http://www.nytimes.com/2011/07/17/automobiles/autoreviews/ford-focus-is-slick-package-but-gearbox-is-a-drag.html (last visited: January 19, 2015).

1
2
3

**be aggravating on back roads or in stop-and-go traffic** . . . . Putting the shifter in the Sport position delays shifts but creates its own problem. Touching the brake while in Sport causes the gearbox to downshift.

4   75.   In that same article, Greg Burgess, a Ford engineer, admitted that

5   Ford made "tradeoffs" in terms of drivability in order to "deliver something that

6   is very, very fuel-efficient."

7   76.   The *New York Times* review by Christopher Jensen further

8   condemned the transmission, stating:  "[i]n its effort to give the car exceptional

9   fuel economy, Ford programmed the PowerShift dual-clutch transmission to

10   change gears in odd and infuriating ways" and that "the logical explanation is

11   that they [the Ford Engineers] were given a fuel economy target and no option

12   but to meet it.  One might wonder why a top executive didn't step in to keep the

13   transmission from reaching market . . . ."

14   77.   The alleged Transmission Defect was inherent in each Class

15   Vehicles' PowerShift Transmission and was present in each Class Vehicles'

16   PowerShift Transmission at the time of sale.

17   78.   The existence of the Transmission Defect is a material fact that a

18   reasonable consumer would consider when deciding whether to purchase or lease

19   a vehicle that was equipped with a PowerShift transmission.  Had Plaintiffs and

20   other Class Members known that the Class Vehicles were equipped with

21   defective transmissions, they would not have purchased or leased the Class

22   Vehicles equipped with the PowerShift Transmissions or would have paid less

23   for them.

24   79.   Irrespective of all the aggregate information, both internal and

25   external, that clearly provided Ford with knowledge that the PowerShift

26   Transmission is dangerously defective, Ford has never disclosed to owners or

27   prospective purchasers that there is a safety defect in the Class Vehicles.  In fact,

28   Ford intentionally and actively concealed the existence of a safety defect in the

1    Class Vehicles.

2         80.    Reasonable consumers, like Plaintiffs, reasonably expect that a

3    vehicle's transmission is safe, will function in a manner that will not pose a

4    safety hazard, and is free from defects.  Plaintiffs and Class Members further

5    reasonably expect that Ford will not sell or lease vehicles with known safety

6    defects, such as the Transmission Defect, and will disclose any such defects to its

7    consumers when it learns of them.  They did not expect Ford to fail to disclose

8    the Transmission Defect to them and to continually deny the defect.

9              **Ford Has Actively Concealed the Transmission Defect**

10        81.    While Ford has been fully aware of the Transmission Defect in the

11   Class Vehicles, it actively concealed the existence and nature of the defect from

12   Plaintiffs and Class Members at the time of purchase, lease, or repair and

13   thereafter.  Specifically, Ford failed to disclose or actively concealed at and after

14   the time of purchase, lease, or repair:

15              (a)    any and all known material defects or material nonconformity

16                     of the Class Vehicles, including the defects relating to the

17                     PowerShift Transmission;

18              (b)    that the Class Vehicles, including their PowerShift

19                     Transmissions, were not in good in working order, were

20                     defective, and were not fit for their intended purposes; and

21              (c)    that the Class Vehicles and their PowerShift Transmissions

22                     were defective, despite the fact that Ford learned of such

23                     defects through alarming failure rates, customer complaints,

24                     as well as other internal sources, as early as 2010.

25        82.    Ford further actively concealed the material facts that the

26   PowerShift transmission was not safe, that it would function in a manner that

27   would pose a safety hazard, and that it was defective.  Instead, Ford sold vehicles

28   with a known safety defect, and failed to disclose this defect to consumers when

1    Ford learned of it.

2                    **Ford's "Communications Strategy"**

3        83.    In 2010, Ford knew of the Transmission Defect and began issuing

4    TSBs in an effort to address it.  But Ford never communicated the TSBs, or the

5    information they contained, directly to the class or prospective buyers.  Instead,

6    Ford prepared a separate series of sanitized documents for its customers intended

7    to induce them into believing that their kicking, bucking, sling-shotting (etc.)

8    vehicles were exhibiting "normal driving characteristics."

9        84.    Indeed, when Class Members with vehicles exhibiting the

10   Transmission Defect bring their vehicles to Ford dealerships, the dealership

11   oftentimes provide class members with a document entitled "PowerShift 6-Speed

12   Transmission Operating Characteristics."  Ford drafted this document and

13   provided it to its dealers to give to customers whose vehicles were exhibiting the

14   Transmission Defect, in an apparent attempt to induce customers into believing

15   the problems they were experiencing were "normal driving characteristics."

16       85.    Rather than disclosing that the PowerShift transmission was

17   defective, this document states that customers may experience "a trailer hitching

18   feel (or a slight bumping fee)" calling this "a normal characteristic of the dry

19   clutch-equipped manual transmission design."  Ford did not disclose in this letter

20   that the PowerShift transmission was defective, and did not disclose the

21   PowerShift transmission exhibits transmission slips, bucking, kicking, jerking,

22   premature internal wear, sudden acceleration, delay in downshifts, delayed

23   acceleration, difficulty stopping the vehicle, or transmission failure.

24       86.    In May of 2012, Ford issued a "Customer Satisfaction Program:

25   Program Number 12B37."  In a letter sent to 2012 Ford Focus drivers, Ford

26   indicated that drivers "may experience rough or jerky automatic transmission

27   shifts.  In addition, the vehicle may experience roll back when the driver is

28   transitioning from the brake pedal to the accelerator pedal while on a slight

incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems. Ford's letter was highly selective—despite Ford's knowledge of the following, Ford did *not* disclose that the PowerShift transmission was defective, and did not disclose the PowerShift transmission exhibits transmission slips, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, or transmission failure.

87.     August 2014, Ford issued a "Customer Satisfaction Program: Program Number 14M01," telling the class that its vehicles "may . . . exhibit excessive transmission shudder during light acceleration. This condition may be caused by fluid contamination of the clutch due to leaking transmission seals." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems. Further, this campaign was only disseminated to owners and not prospective buyers. Ford merely offered more ineffective "repairs" that do not actually fix the problem.   On information and belief, owners who have had this program performed on their vehicles continued to complain of the Transmission Defect as their vehicles were never repaired.

88.     Ford's "Customer Satisfaction Program: Program Number 14M01" letter was highly selective. Despite Ford's knowledge of the following, Ford did *not* disclose that the PowerShift transmission was defective, and did not disclose the PowerShift transmission exhibits transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, or transmission failure.

89.     To the contrary, in an apparent attempt to induce those customers suspecting that their transmission might be defective, Ford wrote in the letter that "slight vibrations may be felt when accelerating the vehicle from low speeds. These characteristics are normal for the PowerShift 6-speed Automatic

1   Transmission."

2   90.    Ford then released, in February of 2015, "Customer Satisfaction

3   Program: Program Number 14M02," informing the class that their Class

4   Vehicles may suffer from symptoms of loss of transmission engagement while

5   driving, no-start, or a lack of power.  Ford blamed these symptoms on failures in

6   the Transmission Control Module ("TCM").  Still, Ford did not issue a recall for

7   the repeatedly failing and dangerous PowerShift Transmission, and this

8   campaign was only disseminated to owners, not prospective purchasers.  Ford

9   merely offered more ineffective "repairs" that do not actually fix the problem.

10   On information and belief, owners who have had this program performed on

11   their vehicles continued to complain of the Transmission Defect as their vehicles

12   were never repaired.

13                              **Service Bulletins**

14   91.    Despite Ford's public insistence that these behavioral characteristics

15   of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued

16   several Technical Service Bulletins ("TSBs") to only its dealers[7] in the United

17   States acknowledging problems in the PowerShift Transmission.  For example,

18   Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs

19   dealers of "concerns such as no engagement or intermittent no engagement in

20   Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise

21   during engagement, and/or a check engine light with transmission control

22   module (TCM) diagnostic trouble code…"

23   92.    Also, Ford's TSB released on January 1, 2011, covering the 2011

24   Fiesta with the PowerShift Transmission, informs dealers of problems with the

25   PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of

26

27   _____
     [7] NHTSA makes some, but not all, service bulletins available online.

28

throttle response while driving."

93.  Additionally, Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

94.  Again, Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta vehicle.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement . . . ."

95.  On information and belief, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

96.  Further, the 2012 Ford Focus was the subject of a Ford TSB issued in September 2011, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…."

97.  In December of 2011, *Motor Trend* magazine characterized these efforts by Ford a "**stealth upgrade**" and that while [t]here's no official recall or service campaign . . . anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

98.  On information and belief, the software upgrades outlined by the various TSBs as well as the repairs described in both Customer Satisfaction Programs issued by Ford were ineffective at addressing the Transmission Defect.

99.  When consumers present the Class Vehicles to an authorized Ford dealer for repair of the transmission, rather than repair the problem under

1  warranty, Ford dealers either inform consumers that their vehicles are
2  functioning properly, or conduct ineffective repairs or software updates that
3  delay the manifestation of defect in an attempt not to pay for it under warranty.

4    100. To this day, Ford still has not notified Plaintiffs and the Class
5  Members that the Class Vehicles suffer from a systemic defect that causes the
6  transmission to malfunction or the Ford is unable to repair the vehicles.

7    101. On information and belief, Ford has caused Plaintiffs and Class
8  Members to expend money at its dealerships to diagnose, repair, or replace the
9  Class Vehicles' transmissions or related components, despite Ford's knowledge
10  of the Transmission Defect.

11    102. On information and belief, Class Members have been selling their
12  vehicles at a monetary loss because of the Transmission Defect and their
13  vehicles have diminished in value because of the Transmission Defect.

## CLASS ACTION ALLEGATIONS

15    103. Plaintiffs bring this lawsuit as a class action on behalf of themselves
16  and all others similarly situated as members of the proposed Plaintiff Classes
17  pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action
18  satisfies the numerosity, commonality, typicality, adequacy, predominance, and
19  superiority requirements of those provisions.

20    104. The Class and Sub-Classes are defined as:

**Nationwide Class**:  All individuals in the United States who purchased or leased any 2011 through 2015 Ford Fiesta or 2012 through 2015 Ford Focus vehicles equipped with a PowerShift Transmission.

**California Sub-Class**:  All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**:  All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

105.    Excluded from the Class and Sub-Class are:  (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

106.    There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

107.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

108.    Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Ford, and equipped with a PowerShift Transmission.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective transmission.  Furthermore, the factual bases of Ford's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

109.    Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting

only individual Class Members.  These common legal and factual issues include the following:

    (a)    Whether Class Vehicles contain defects relating to the PowerShift Transmission;

    (b)    Whether the defects relating to the PowerShift Transmission constitute an unreasonable safety risk;

    (c)    Whether Defendant knew about the defects relating to the PowerShift Transmission and, if so, how long Defendant has known of the defect;

    (d)    Whether the defective nature of the PowerShift Transmission constitutes a material fact;

    (e)    Whether Defendant has a duty to disclose the defective nature of the PowerShift Transmission to Plaintiffs and Class Members;

    (f)    Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

    (g)    Whether Defendant knew or reasonably should have known of the defects relating to the PowerShift Transmission before it sold and leased Class Vehicles to Plaintiffs and Class Members;

    (h)    Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective PowerShift Transmission;

    (i)    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective PowerShift Transmission;

1    and

2    (j)    Whether Defendant breached the implied warranty of

3           merchantability pursuant to the Song-Beverly Act.

4    110.    Adequate Representation:  Plaintiffs will fairly and adequately

5    protect the interests of the Class Members.  Plaintiffs have retained attorneys

6    experienced in the prosecution of class actions, including consumer and product

7    defect class actions, and Plaintiffs intend to prosecute this action vigorously.

8    111.    Predominance and Superiority:  Plaintiffs and the Class Members

9    have all suffered and will continue to suffer harm and damages as a result of

10   Defendant's unlawful and wrongful conduct.  A class action is superior to other

11   available methods for the fair and efficient adjudication of the controversy.

12   Absent a class action, most Class Members would likely find the cost of

13   litigating their claims prohibitively high and would therefore have no effective

14   remedy at law.  Because of the relatively small size of the individual Class

15   Members' claims, it is likely that only a few Class Members could afford to seek

16   legal redress for Defendant's misconduct.  Absent a class action, Class Members

17   will continue to incur damages, and Defendant's misconduct will continue

18   without remedy.  Class treatment of common questions of law and fact would

19   also be a superior method to multiple individual actions or piecemeal litigation in

20   that class treatment will conserve the resources of the courts and the litigants,

21   and will promote consistency and efficiency of adjudication.

22   112.    In the alternative, this action is certifiable under the provisions of

23   Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

24   (a)    The prosecution of separate actions by individual members of

25          the Class would create a risk of inconsistent or varying

26          adjudications with respect to individual members of the Class

27          which would establish incompatible standards of conduct for

28          Nissan;

(b)    The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Nissan has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

113.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## TOLLING OF THE STATUTE OF LIMITATIONS

114.   Because the defect is undetectable until it manifests and Ford failed to disclose or intentionally concealed the Transmission Defect, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing the Class Vehicles, despite exercise of due diligence.

115.   Additionally, on information and belief, Ford instructed its authorized dealership employees and technicians to inform Class Members that the manifestations of the Transmission Defect in their PowerShift Transmission was normal, and therefore not a defect as alleged herein.

116.   Plaintiffs and the Class Members had no realistic ability to discern that the PowerShift Transmissions in Class Vehicles were defective.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

117.   Plaintiffs are informed and believe and based thereon allege that Ford has known of the Transmission Defect since at least 2010 and has concealed from or failed to alert owners of the Class Vehicles of the defective nature of the PowerShift Transmissions.

118.   Any applicable statute of limitation has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein.  Defendant is further estopped from relying on any statute of limitation because of its concealment of the Transmission Defect.

## FIRST CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*)**

**(Brought by Plaintiffs Kevin and Andrea Klipfel)**

119.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

120.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the CLRA Sub-Class.

121.   Defendant is a "person" as defined by California Civil Code § 1761(c).

122.   Plaintiffs and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family or household use.

123.   By failing to disclose and concealing the defective nature of the transmissions from Plaintiffs and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

124.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

125.   Defendant knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

126.   As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

127.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b)   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

128.   In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its

1  duty not to do so.

2      129.   The facts Defendant concealed from or did not disclose to Plaintiffs

3  and the Class Members are material in that a reasonable consumer would have

4  considered them to be important in deciding whether to purchase or lease the

5  Class Vehicles or pay less.  Had Plaintiffs and other Class Members known that

6  the Class Vehicles' transmissions were defective, they would not have purchased

7  or leased the Class Vehicles or would have paid less for them.

8      130.   Plaintiffs and the Class Members are reasonable consumers who do

9  not expect the transmissions installed in their vehicles to exhibit transmission

10  slips, kicking forward, jerking, premature internal wear, delayed acceleration,

11  and/or difficulty in stopping the vehicle.  This is the reasonable and objective

12  consumer expectation relating to vehicle transmissions.

13      131.   As a result of Defendant's conduct, Plaintiffs and Class Members

14  were harmed and suffered actual damages in that the Class Vehicles experienced

15  and will continue to experience transmission slips, kicking forward, jerking,

16  increased stopping times, premature internal wear, delayed acceleration, and,

17  eventually, transmission failure.

18      132.   As a direct and proximate result of Defendant's unfair or deceptive

19  acts or practices, Plaintiffs and Class Members suffered and will continue to

20  suffer actual damages.

21      133.   Plaintiffs and the Class are entitled to equitable relief.

22      134.   Plaintiffs provided Defendant with notice of its violations of the

23  CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide

24  appropriate relief for their violations of the CLRA.  Therefore Plaintiffs now

25  seek monetary, compensatory, and punitive damages, in addition to the

26  injunctive and equitable relief that they sought before.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

**(Brought by Plaintiffs Kevin and Andrea Klipfel)**

135.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

136.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Sub-Class.

137.   As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

138.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

139.   Plaintiffs and the Class Members are reasonable consumers who do not expect their transmissions to exhibit transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, delayed acceleration, and, eventually, transmission failure.

140.   Defendant knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

141.   In failing to disclose the defects with the transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

142.   Defendant was under a duty to Plaintiffs and the Class Members to

disclose the defective nature of the Class Vehicles and their transmissions:

        (a)    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

        (b)    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their transmissions; and

        (c)    Defendant actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiffs and the Class.

143.   The facts Defendant concealed from or not disclosed to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had Plaintiffs and other Class Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them.

144.   Defendant continued to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

145.   Defendant's conduct was and is likely to deceive consumers.

146.   Defendant's acts, conduct and practices were unlawful, in that they constituted:

        (a)    Violations of the California Consumer Legal Remedies Act;

        (b)    Violations of the Song-Beverly Consumer Warranty Act; and

        (c)    Violations of the express warranty provisions of California Commercial Code section 2313.

147.   By its conduct, Defendant has engaged in unfair competition and

1  unlawful, unfair, and fraudulent business practices.

2      148.   Defendant's unfair or deceptive acts or practices occurred

3  repeatedly in Defendant's trade or business, and were capable of deceiving a

4  substantial portion of the purchasing public.

5      149.   As a direct and proximate result of Defendant's unfair and deceptive

6  practices, Plaintiffs and the Class have suffered and will continue to suffer actual

7  damages.

8      150.   Defendant has been unjustly enriched and should be required to

9  make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of

10  the Business & Professions Code.

11                    **THIRD CAUSE OF ACTION**

12          **(Breach of Implied Warranty Pursuant to Song-Beverly**

13  **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

14            **(Brought by Plaintiffs Kevin and Andrea Klipfel)**

15      151.   Plaintiffs incorporate by reference the allegations contained in the

16  preceding paragraphs of this Complaint.

17      152.   Plaintiffs bring this cause of action against Defendant on behalf of

18  themselves and on behalf of the members of the Implied Warranty Sub-Class.

19      153.   Defendant was at all relevant times the manufacturer, distributor,

20  warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

21  know of the specific use for which the Class Vehicles were purchased or leased.

22      154.   Defendant provided Plaintiffs and Class Members with an implied

23  warranty that the Class Vehicles and their components and parts are

24  merchantable and fit for the ordinary purposes for which they were sold.

25  However, the Class Vehicles are not fit for their ordinary purpose of providing

26  reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

27  and their transmissions suffered from an inherent defect at the time of sale and

28  thereafter are not fit for their particular purpose of providing safe and reliable

1    transportation.

2        155.   Defendant impliedly warranted that the Class Vehicles were of

3    merchantable quality and fit for such use.  This implied warranty included,

4    among other things:  (i) a warranty that the Class Vehicles and their

5    transmissions were manufactured, supplied, distributed, and/or sold by Ford

6    were safe and reliable for providing transportation; and (ii) a warranty that the

7    Class Vehicles and their transmissions would be fit for their intended use while

8    the Class Vehicles were being operated.

9        156.   Contrary to the applicable implied warranties, the Class Vehicles

10   and their transmissions at the time of sale and thereafter were not fit for their

11   ordinary and intended purpose of providing Plaintiffs and the Class Members

12   with reliable, durable, and safe transportation.  Instead, the Class Vehicles are

13   defective, including, but not limited to, the defective design and manufacture of

14   their transmissions.

15       157.   As a result of Defendant's breach of the applicable implied

16   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

17   loss of money, property, and/or value of their Class Vehicles. Additionally, as a

18   result of the Transmission Defect, Plaintiffs and the Class Members were harmed

19   and suffered actual damages in that the Class Vehicles' transmissions are

20   substantially certain to fail before their expected useful life has run.

21       158.   Defendant's actions, as complained of herein, breached the implied

22   warranty that the Class Vehicles were of merchantable quality and fit for such

23   use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (For Breach of Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)

27       159.   Plaintiffs incorporate by reference the allegations contained in the

28   preceding paragraphs of this Complaint.

160.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members.

161.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against Defendant.

162.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

163.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

164.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

165.   Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

166.   Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.  In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, **repair, replace, or adjust all parts on your vehicle that malfunction or fail** during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.  Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse.  In that case, your coverage ends at 36,000 miles."

167.   Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components (including the

1  "Transmission: all internal parts, clutch cover, seals and gaskets, torque

2  converter, transfer case (including all internal parts), transmission case,

3  transmission mounts") "for five years or 60,000 miles, whichever occurs first."

4       168.   On information and belief, Defendant breached the express warranty

5  by:

6         (a)   Extending a 3 year/36,000 mile Bumper to Bumper Limited

7             Warranty and 5 year/60,000 mile Powertrain Limited

8             Warranty with the purchase or lease of the Class Vehicles,

9             thereby warranting to repair or replace any part defective in

10             material or workmanship, including the subject transmission,

11             at no cost to the owner or lessee;

12         (b)   Selling and leasing Class Vehicles with transmissions that

13             were defective in material and workmanship, requiring repair

14             or replacement within the warranty period;

15         (c)   Refusing to honor the express warranty by repairing or

16             replacing, free of charge, the transmission or any of its

17             component parts or programming and instead charging for

18             repair and replacement parts; and

19         (d)   Purporting to repair the transmission and its component parts

20             by replacing the defective transmission components with the

21             same defective components and/or instituting temporary fixes,

22             on information and belief, to ensure that the Transmission

23             Defect manifests outside of the Class Vehicles' express

24             warranty period.

25       169.   Furthermore, Defendant impliedly warranted that the Class Vehicles

26  were of merchantable quality and fit for such use.  This implied warranty

27  included, among other things:  (i) a warranty that the Class Vehicles and their

28  transmissions were manufactured, supplied, distributed, and/or sold by Ford

were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

170.   Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including, but not limited to, the defective design of their transmissions.

171.   Defendant's breach of express and implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

172.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

173.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the transmission.

174.   As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

175.   Additionally, Ford breached the express warranty by performing illusory repairs.  Rather than repairing the vehicles pursuant to the express warranty, Ford falsely informed class members that there was no problem with their vehicles, performed ineffective software updates, or replaced defective

1  components in the PowerShift Transmissions with equally defective components,

2  without actually repairing the vehicles.

3      176.   As a result of Defendant's violations of the Magnuson-Moss

4  Warranty Act as alleged herein, Plaintiffs and Class Members have incurred

5  damages.

6                    **FIFTH CAUSE OF ACTION**

7      **(For Breach of Express Warranty Under Cal. Comm. Code § 2313)**

8          **(Brought by Plaintiffs Kevin and Andrea Klipfel)**

9      177.   Plaintiffs incorporate by reference the allegations contained in the

10  preceding paragraphs of this Complaint.

11      178.   Plaintiffs bring this cause of action on behalf of themselves and on

12  behalf of the California Sub-Class.

13      179.    As a result of Defendant's breach of the applicable express

14  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

15  loss of money, property, and/or value of their Class Vehicles. Additionally, as a

16  result of the Transmission Defect, Plaintiffs and the Class Members were harmed

17  and suffered actual damages in that the Class Vehicles' transmissions are

18  substantially certain to fail before their expected useful life has run.

19      180.   Defendant provided all purchasers and lessees of the Class Vehicles

20  with the express warranty described herein, which became a material part of the

21  bargain.  Accordingly, Defendant's express warranty is an express warranty

22  under California law.

23      181.   Defendant manufactured and/or installed the transmission and its

24  component parts in the Class Vehicles and the transmission and its component

25  parts are covered by the express warranty.

26      182.   Ford provided all purchasers and lessees of the Class Vehicles with

27  a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain

28  Limited Warranty with the purchase or lease of the Class Vehicles.  In this

Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, **repair, replace, or adjust all parts on your vehicle that malfunction or fail** during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.  Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse.  In that case, your coverage ends at 36,000 miles."

183.   Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts" "for five years or 60,000 miles, whichever occurs first."

184.   On information and belief, Defendant breached the express warranty by:

> (a)   Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;
>
> (b)   Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period;
>
> (c)   Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its

component parts or programming and instead charging for
repair and replacement parts; and

(d)    Purporting to repair the transmission and its component parts
by replacing the defective transmission components with the
same defective components and/or instituting temporary fixes,
on information and belief, to ensure that the Transmission
Defect manifests outside of the Class Vehicles' express
warranty period.

185.   Plaintiffs were not required to notify Ford of the breach because affording Ford a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

186.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease.  Additionally, Plaintiffs and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

187.   Additionally, Ford breached the express warranty by performing illusory repairs.  Rather than repairing the vehicles pursuant to the express warranty, Ford falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the PowerShift Transmissions with equally defective components, without actually repairing the vehicles.

188.   Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as

1   appropriate.

2   ### SIXTH CAUSE OF ACTION

3   **(Unjust Enrichment)**

4   **(Brought by Plaintiffs Kevin and Andrea Klipfel)**

5   189.   Plaintiffs incorporate by reference the allegations contained in the

6   preceding paragraphs of this Complaint.

7   190.   Plaintiffs bring this cause of action, in the alternative, on behalf of

8   themselves and on behalf of the Class Members against Defendant.

9   191.   As a direct and proximate result of Defendant's failure to disclose

10   known defects and material misrepresentations regarding known defects,

11   Defendant has profited through the sale and lease of said vehicles.  Although

12   these vehicles are purchased through Defendant's agents, the money from the

13   vehicle sales flows directly back to Defendant.

14   192.   Additionally, as a direct and proximate result of Defendant's failure

15   to disclose known defects and material misrepresentations regarding known

16   defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that

17   require high-cost repairs that can and therefore have conferred an unjust

18   substantial benefit upon Defendant.

19   193.   Defendant has therefore been unjustly enriched due to the known

20   defects in the Class Vehicles through the use of funds that earned interest or

21   otherwise added to Defendant's profits when said money should have remained

22   with Plaintiffs and Class Members.

23   194.   As a result of the Defendant's unjust enrichment, Plaintiffs and

24   Class Members have suffered damages.

25   ### RELIEF REQUESTED

26   195.   Plaintiffs, on behalf of themselves, and all others similarly situated,

27   requests the Court to enter judgment against Defendant, as follows:

28   (a)      An order certifying the proposed Class and Sub-Classes,

designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the transmission, including the need for period maintenance;

(c)   An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiffs and Class Members' transmissions with a suitable alternative product; enjoining Defendant from selling the Class Vehicles with the misleading information;  compelling Defendant to provide Class members with a replacement transmission that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class members that such warranty has been reformed;

(d)   A declaration requiring Defendant to comply with the various provisions of the Song-Beverly Act alleged herein and similar statutes and to make all the required disclosures;

(e)   An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, and including the additional purchase cost of the PowerShift Transmission option, in an amount to be proven at trial;

(f)   Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(g)   A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from

1                the sale or lease of its Class Vehicles, or make full restitution

2                to Plaintiffs and Class Members;

3      (h)    An award of attorneys' fees and costs, as allowed by law;

4      (i)     An award of attorneys' fees and costs pursuant to California

5                Code of Civil Procedure § 1021.5;

6      (j)     An award of pre-judgment and post-judgment interest, as

7                provided by law;

8      (k)    Leave to amend the Complaint to conform to the evidence

9                produced at trial; and

10     (l)     Plaintiffs demand that Ford perform a recall, and repair all

11               vehicles.

12     (m)   Such other relief as may be appropriate under the

13               circumstances.

14                    **DEMAND FOR JURY TRIAL**

15    196.   Plaintiffs demand a trial by jury of any and all issues in this action

16 so triable.

17 Dated:  May 20, 2015            Respectfully submitted,

18                         Capstone Law APC

19

20                By: /s/ Jordan L. Lurie

21                   Jordan L. Lurie

22                   Robert Friedl
                     Tarek H. Zohdy

23                   Cody R. Padgett

24                   Attorneys for Plaintiffs Kevin Klipfel and
                     Andrea Klipfel

25

26

27

28